Wolford Morris Sales, Inc., Plaintiff-Appellee, v. Jack H. Weiner and Organ Grinder, Inc., a Corporation, Defendants-Appellants.

Gen. No. 10,698.

Fourth District.

September 26, 1966.

Rehearing denied and opinion modified November 2, 1966.

Londrigan & Londrigan, of Springfield (James T. Londrigan, of counsel), for appellants.

Gillespie, Burke & Gillespie, of Springfield, for appellee.

TRAPP, P. J.

The defendant Jack H. Weiner appeals from a judgment in the amount of $10,000 upon the verdict of the jury after remittitur. The defendant and counterclaimant, Organ Grinder, Inc., appeals from a judgment entered upon the verdict of the jury finding in favor of the plaintiff counterdefendant as to the counterclaim and a judgment entered upon the verdict of the jury in the amount of $6,702.68 upon plaintiff's complaint.

Count I of the complaint alleges that on the 10th day of July, 1958, plaintiff, through its president Wolford Morris acting upon the request of the defendant Jack H. Weiner, loaned to the latter the sum of $10,000 by delivering to him a check; that Weiner promised to pay the sum upon demand and that he failed to do so despite demands made upon him. In Count II the complaint alleges that on the 25th day of April, 1960, the plaintiff and defendant Jack Weiner met and stated an account by which the sum of $10,000 was found to be due from Weiner, who promised to pay said sum but has not done so despite demands made.

Jack H. Weiner denies the allegations of the complaint.

As to the defendant Organ Grinder, Inc., hereinafter referred to as "Corporation," the complaint alleges that from the 30th day of June, 1958, through June 10, 1959, plaintiff, at the request of defendant "Corporation," sold and delivered certain kitchen equipment, supplies, merchandise, appliances and fixtures which "Corporation" agreed to pay for; that on the 26th day of April, 1960, the plaintiff and defendant "Corporation," acting through and by Jack H. Weiner as an officer of "Corporation," met together and accounted concerning the total amount of money due and owing from "Corporation" to the plaintiff, and at that time "Corporation" agreed to pay such amount but had refused to make such payments after demand made; that after allowing all credits due "Corporation," it owes to the plaintiff the sum of $16,702.68, which remains unpaid.

The defendant Jack H. Weiner urges that the trial court erred in refusing to direct a verdict, in denying his motion to withdraw Count II of the complaint because of insufficient evidence under the provisions of c 110, § 68 (4), (Ill Rev Stats), and in refusing to enter a judgment n. o. v. In the alternative, defendant Weiner urges that a new trial should be granted this defendant Jack H. Weiner in that the verdict of the jury is against the manifest weight of the evidence, and that there is prejudicial error in the admission of the deposition of one Redfern. Each defendant alleges error in admitting plaintiff's Exhibits #14 and #15, purporting to relate to an account stated, and in the giving or refusal of instructions as discussed hereinafter.

Upon the issue as to whether the verdict against Jack H. Weiner should be set aside, we find that the dealings originate, so far as specific or documentary evidence shows, in plaintiff's Exhibit #5, dated June 26, 1958. This instrument, which was not abstracted, is in the

form of an assignment to the Illinois National Bank of Springfield, Springfield, Illinois, of:

"The Following:
"Assignment of Contract on the 'Organ Grinder Room' signed by J. H. Weiner, in the amount of $70,000.00."

This document bears the signature of J. H. Weiner as accepting the assignment made to the bank by Wolford A. Morris. Plaintiff's Exhibit B, also omitted from the Abstract, is a copy of a letter dated June 27, 1958, addressed to Mr. J. H. Weiner, Ridgely Bank Building, Springfield, Illinois, quoted in part as follows:

"This letter is written to notify you that I have assigned to The Illinois National Bank of Springfield, of Springfield, Illinois, the sum of $70,000. owing by you to me on contract."

which letter also authorized and directed Weiner to make payments by checks payable to both the assignee bank and Wolford A. Morris, and to send the checks directly to the bank until such time as notified that the assignment has been released. We find no dispute in the record concerning the authenticity or the applicability of these documents. This defendant testified that the assignment of the contract was accepted by him as an individual.

No specific contract, which would be the subject of assignment, has been put into evidence, but the testimony is that the execution of the assignment to the bank permitted plaintiff to finance equipment furnished in constructing the Organ Grinder Room. There is no controversy as to the fact that equipment was furnished.

With reference to the transactions alleged in Count I, Wolford Morris testified that shortly after the assignment he talked with Weiner in front of the hotel owned by defendant Weiner and adjacent to the Organ Grinder Room then being constructed, and that defendant told

242

Morris that he needed money to pay contractors and suggested or requested that Morris borrow $10,000 against the assignment at the bank, and that defendant's partner in the hotel, one Yates, would return to Springfield in two or three days and that defendant would pay back the $10,000. Morris testified that he would have to talk to the bank because the assignment was only to be used for purchasing equipment. Morris further testified that thereafter he obtained a loan from the bank on the assignment and gave to the bank the note of plaintiff company. He testified that thereafter he drew a check upon the company account payable to defendant. Plaintiff's Exhibit #8 is a check in the sum of $10,000. Upon examination of the exhibit, it appears that the payee of the check is "Jack Weiner" in a form of printed script. Immediately above the name of the payee, in written script, there appear the further words, "Organ Grinder Room." Upon the reverse side of the exhibit appears the legend "Organ Grinder, Inc. Stanley A. Weiner for deposit." Morris testified that he delivered the check to the defendant, but that at the time of such delivery, the words "Organ Grinder Room" were not on the check. Dorothy Bailey, plaintiff's bookkeeper, testified that she prepared the check and that the payee inserted by her was "Jack Weiner," and that she did not insert the words "Organ Grinder Room." Morris further testified that he delivered the check to Weiner in front of the Governor Hotel, but that nothing was said at that time and that he had no knowledge of the form of endorsement until this litigation. He further testified that he understood the check would be used to pay contractors working at the Governor Hotel and Organ Grinder Room, but did not know that the check would be deposited in the account of the defendant "Corporation."

With respect to the transaction, defendant Weiner testified that three or four days before the money was borrowed he saw Morris and defendant's brother, Irwin, in

the Organ Grinder Room, that the brother said that $25,000 or $30,000 was due to contractors for the work then being done on the Organ Grinder Room, and suggested that Morris borrow $10,000 to pay off the contractors. Defendant testified that he suggested that there was the assignment at the bank, that there was nothing in the contract which limited plaintiff's borrowing to pay for equipment and that it would be feasible to go to the bank and borrow $10,000 on the assignment so that the contractors could be paid. He further testified that at the time of the delivery he, the defendant, was talking with his son in the hotel, that Morris handed the check to him and that he, the defendant, in turn handed the check to his son and told him to deposit it in the "Organ Grinder account." Defendant testifies that he did not add the words, "Organ Grinder Room" to the face of the check and that he did not know that the check was made to him individually, and that he did not make the endorsement for deposit.

Irwin Weiner, brother of Jack H. Weiner, testified in behalf of Weiner that in the early part of July, 1958, the contractors were asking for money and that he finally called Wolford Morris and asked him to borrow money at the bank against Organ Grinder, Inc. to pay the contractors. He testified that he was the one who told Morris to get the money because there was an assignment "from Organ Grinder he could borrow on." He testified that he did not see the check or write anything on the face of the check.

Stanley Weiner, son of defendant Jack H. Weiner, testified that at about the time Morris handed the check to his father, the latter gave him the check and said: "Take this to the bank and put it in the Organ Grinder account," that he did so, endorsing it for deposit in an account designated "Organ Grinder, Inc." He testified that he did not add the words, "Organ Grinder Room" above the

designation of payee on the check and he did not observe the face of the check.

There is a pervading ambiguity throughout the testimony offered as to the designation of the "Organ Grinder Room" and Organ Grinder, Inc. The so-called contract was on the "Organ Grinder Room" as the contract of the defendant Jack H. Weiner. In referring to the transactions in this period the witnesses rarely used the term "Organ Grinder, Inc.", and the documentary references in billings of the plaintiff and in the testimony of defendant's witnesses is to the "Organ Grinder" or the "Organ Grinder Room." In view of the nature of the initial contractual designation, it would not seem unreasonable for plaintiff to set up its accounts as the "Organ Grinder Room," and there is no conclusive reason for saying, as has been argued by defendant "Corporation," that the several billings as to the latter necessarily impeaches the claim of the plaintiff. During this period of time, the status of "Organ Grinder, Inc." is never satisfactorily shown in the record. It may roughly be summarized that defendant Jack H. Weiner, during 1957, contemplated a coffee shop in connection with the Governor Hotel in which he was a principal owner. This seemed to evolve into a proposed bar and dining room and ultimately became the project designated the "Organ Grinder Room." It appears that in early 1958 there was conversation leading to the creation of a corporation, and there is evidence that Wolford Morris was to be accepted as a shareholder. The defendant Weiner was not considered to be a shareholder in the corporation at this time, although he owned the premises where the "Organ Grinder Room" was being constructed, and no lease of the premises is in evidence. The testimony of James Martin, an attorney, is that the corporation was chartered in the early part of 1958. The evidence is that no shares had been issued as late as 1961, and that probably no shares were issued until 1963, by

which time the defendant Jack H. Weiner had contributed substantial sums to the corporation, and had become a shareholder.

The other evidence as to the nature of the transaction comes from the evidence of one Redfern who, at the time in question, handled the assignment contract in behalf of the Illinois National Bank. While there are objections to the admissibility of the testimony of Redfern as hearsay, we find that it was in response to the questions of Weiner's counsel that Redfern testified that at the time the plaintiff, through its president Wolford Morris borrowed the $10,000 in issue, Morris stated that it was a short-term personal loan to the defendant Jack H. Weiner.

██ Under the evidence noted, we must conclude that the trial court did not err in refusing to direct a verdict in favor of the defendant upon Count I, or in refusing to grant a judgment n. o. v., for it has long been held that the single question presented under such motions is whether there is any evidence which, standing alone and taken with all its intendments most favorable to the plaintiff and which fairly tends to support the cause of action so that the jury might reasonably have found for the plaintiff. Sommese v. Maling Bros., Inc., 65 Ill App2d 223, 213 NE2d 153; Perkins v. Chicago Transit Authority, 60 Ill App2d 431, 208 NE2d 867.

█ We also conclude that it cannot be said that the verdict of the jury is against the manifest weight of the evidence. In addition to the testimony noted, we find from the testimony of Irwin Weiner that as to the construction of the proposed "Organ Grinder Room," the bank had refused to give him credit and had required the defendant Jack H. Weiner to enter into the contract. It appears from the testimony of the defendant that he, himself, had suggested that plaintiff borrow the money upon the assignment of the contract at a date approxi-

246

mately two weeks after the assignment of what he, himself, described as a personal contract. There is nothing in the record which demonstrates that the so-called contract assigned by Jack H. Weiner was ever transferred by assignment or otherwise to Organ Grinder, Inc., and as noted, there is no evidence that Organ Grinder, Inc. had a lease or other contract interest in the "Organ Grinder Room."

■ There has been a contention that the deposit of the check to the account of Organ Grinder, Inc. constituted a novation. The essential elements of a novation include a previous valid obligation and the agreement of all parties to a new contract which extinguishes the former contract. Black's Law Dictionary, 1944. We find no evidence supporting the required elements.

■ The defendant Weiner asserts error in refusing defendant's instruction #10 upon defendant's theory that the money in issue had been repaid, but defendant himself, however, as well as his accountant Cain, had testified to a total amount found due to plaintiff which included this amount, and under such evidence the denial of the instruction is not reversible error.

■ As to the defendant, Jack H. Weiner, this jury returned a general verdict. Where several causes of action are charged and a general verdict is returned, such will be sustained if there are one or more good counts or causes of action to support it. Finding no reversible error as to Count I, we, therefore, do not review error alleged as to Count II. Hylak v. Marcal, Inc., 335 Ill App 48, 80 NE2d 411.

The status of Organ Grinder, Inc. in this appeal is not clear. The record discloses a notice to creditors in bankruptcy which set forth that the corporation was adjudged bankrupt on its petition filed September 27, 1965, i. e., following the filing of its notice of appeal. The record

247

does not disclose whether a trustee in bankruptcy was ever appointed and there has been no motion to add any party.

Upon the issue as to whether or not there was an account stated between the plaintiff and Organ Grinder, Inc., we find that on or about April 25, 1960, plaintiff, by Wolford Morris, and its attorney, James Martin, Jack H. Weiner, now president of the corporation, Irwin Weiner and John Cain, their accountant, met to review the state of the accounts of the parties. Cain testified that there had been a number of meetings or discussions as to this matter and that he had examined the books and records of the plaintiff in behalf of the defendant, and had submitted a statement or work paper summarizing his examination, and that the meeting on this date was to review and determine the amounts owed. Jack H. Weiner and Irwin Weiner each testified that prior to this meeting they were of the impression that some $6,000 or $7,000 was owed for equipment. Cain, in behalf of the defendant, testified that his examination of the accounts disclosed that approximately $17,000 was owed to plaintiff (which sum included the $10,000 heretofore discussed). James Martin, attorney for plaintiff, testified that as the result of their review and discussion, the balance demonstrated to be due upon the several transactions was $17,715.87. Plaintiff's Exhibit #12 designated charges and reconciliation of charges prepared as of June 15, 1959, by the accountant Cain, discloses that the balance due for equipment and appliances was $8,137.11.

The following day Martin, in behalf of plaintiff, wrote a letter, designated in the evidence as plaintiff's Exhibit #14, addressed to the defendant, Jack Weiner. In substance, the letter indicated that it was to confirm the agreement reached at the conference concerning the balance due on the Organ Grinder, Inc. account which had been determined and agreed to be $7,715.87, after a credit to the balance shown on Cain's account. This letter noted

248

that the defendant Jack H. Weiner acknowledged liability and that there had been agreement for the execution of a corporate note for the total which would be guaranteed by Jack H. Weiner, Irwin Weiner and Stanley Weiner, individually. The enclosed note was not signed and the record does not disclose that there was a reply to this letter in behalf of the defendant. Thereafter, on May 13, 1960, Martin, in behalf of the plaintiff, again wrote to the defendant Jack H. Weiner, referring to the agreement to execute a note to be guaranteed above. This letter is designated plaintiff's Exhibit #15. There was also reference to other matters discussed, including the fact that plaintiff would help with regard to the disposition of several items of equipment, called attention to the fact that the account had not been settled as agreed, and that he, as attorney, had been instructed to file suit.

Defendant contends that it was error to admit such letters into evidence as they were self-serving statements, while plaintiff urges that such letters were admissible as a statement of account and an agreement to pay, as well as evidence of a demand.

 It appears that many forms of an account stated could be described as self-serving statements. The nature of an account stated has been summarized in Pure Torpedo Corp. v. Nation, 327 Ill App 28, 63 NE2d 600, where an action was brought on an account stated and the defendant counterclaimed, alleging negligence which caused extensive damages. Defendant denied that he made an unqualified promise to pay, contending that he had only promised to pay upon settlement of damages. This opinion reviews, at length, the nature and meaning of an account stated and the law relevant to such. In brief, relevant items set forth, include: An account stated is an agreement between parties who have had previous transactions of a monetary character that the items of account are true and that the balance is correct; that the meeting of the minds of the parties upon

249

the correctness of an account stated is usually the result of a statement of account by one party and agreement thereto by the other, but the form of agreement or assent is immaterial and such may be implied from the conduct of the parties and the circumstances of the case; that an account rendered by one and retained by the other beyond a reasonable time without objection constitutes a recognition of the correctness of the account and establishes an account stated so that it is conclusive unless impeached for fraud or mistake.

The opinion notes that the parties had given no consideration to the alleged claims for damages in stating the account and said:

> "The balance agreed to be due has to do only with the items considered, and the items not considered may be the subject of setoff or counterclaim."

We note that the present case actually proceeded upon this course.

In Associated Furniture Manufacturers v. Leader House Furniture Co., 224 Ill App 597, it is stated that an account stated is a final adjustment of items in accounting and that when the fact of an account stated is disputed, it is a question for the jury to determine whether an account is stated. It is also held to be a jury question as to whether or not the accuracy of an account stated was accepted by failure to object to the account.

In argument defendant contends that in his behalf, the accountant, John Cain, denied the accuracy of the account. Such letter is not in evidence, but a quotation of a sentence apparently from such letter is contained in plaintiff's Exhibit #15. Since defendant has argued such point, we feel it fair to note that it does not appear that the Cain letter raised any question as to the accuracy of the account, but that he was "against any further action on this account" until such time as matters of claim con-

tained in the counterclaim of the defendant, "Organ Grinder, Inc." hereinafter discussed, were settled.

In support of his contention that the letters admitted as exhibits were self-serving statements and hence improperly admitted, defendant has cited certain authorities. It appears that these authorities do not refer to documents of the nature of an account stated, and, more specifically, do not purport to be related to transactions or agreements between the parties concerning the matter at issue. In Kirkpatrick v. United Federation of Postal Clerks Benefit Ass'n, 52 Ill App2d 457, 202 NE2d 136, letters relating to a claim for disability were held inadmissible where the party had set forth his medical history and treatment, related the statements made by physicians at a hospital treating him, and indicated that he was married and had a family. The case was reversed for the admission of these letters, and also the admission of incompetent lay opinion concerning the disability.

In Village of Morton Grove v. Gelchsheimer, 16 Ill2d 453, 158 NE2d 70, it was held improper to admit a summary or statement described as a written synopsis of oral testimony which included computations as to matters which were hearsay insofar as the individual preparing the synopsis was concerned.

In The Anglo-Calif. Trust Co. v. Essanay Film Co., 324 Ill 249, 155 NE 26, it was held error to permit the defendant to introduce certain book accounts and records of expenses to support a plea of setoff for legal expenses. While the opinion refers to the statements rendered by the attorneys to the defendant as hearsay, a more specific reason for the ruling seems to be that there was no showing that the expenses claimed as were setoff were reasonable, necessary or solely for the purpose of the litigation supporting the plea of setoff. Similarly, in Home Life Ins. Co. v. Franklin, 303 Ill App 146, 24 NE2d 874, the series of letters held inadmissible did not relate to a

251

mutual transaction between the parties, but constituted a statement of claims made by one party. In Cooke Co. v. Miller Brewing Co., 316 Ill 46, 146 NE 459, it was held that certain letters were inadmissible wherein plaintiff was claiming performance of the contract. It did not purport to deal with matters actually transacted between the parties. This opinion seems to distinguish letters which deal with the construction of a disputed contract and are admissible from letters which claim performance of the contract in issue and are not admissible.

 We believe that, under the authorities cited and the evidence in this case, the question of whether or not there was an account stated between the parties and a promise to pay made by the defendant were properly submitted to the jury.

 With regard to the counterclaim of Organ Grinder, Inc., it is contended that the theory is of a breach of contract characterized as negligence in planning the construction and setting up the business, and it is also the theory that there was an implied warranty that the appliances and equipment would be good and sufficient for the purposes for which bought. As to the alleged negligent construction by the defendant, the brief contains no citations of authority and there is no argument presented with regard to the design and construction. Such items must, therefore, be deemed waived. Sny Island Levee Drain. District v. Meyer, 27 Ill2d 530, 190 NE2d 356; City of Chicago v. Porter, 26 Ill App2d 323, 168 NE2d 468; Appellate Court Rule 7, c 110, § 201-7 (Ill Rev Stats, 1965).

It is argued in behalf of Organ Grinder, Inc. that its counterclaim is based upon a contract to furnish "goods" good and sufficient for the purpose for which bought, and that there was a sale of defective merchandise.

The counterclaim contained an allegation:

"That the plaintiff also assured defendant that all personal property, merchandise, equipment, fixtures, appliances, bar equipment, cooling equipment, ice-machine, exhaust fans, carpeting, kitchen equipment and all incidental items pertaining to said business would be of good quality, servicable (sic) operational and free of defects; that defendant relied upon such assurances, <u>thereby impliedly warranting that the goods and materials furnished were fit for the purposes required.</u>"

The underlined portion of the quoted allegation was made by handwritten interlineation upon motion during the course of the trial. Considering the specific nature of the allegation prior to the interlineation, the amendment added can only be considered a conclusion of law, analogous to general allegations as to the duties of a party. Darling v. Charleston Community Memorial Hospital, 50 Ill App2d 253, 200 NE2d 149.

██ ██ With this view of the nature of the pleadings, defendant's contention that matters of express warranty were not in issue cannot be sustained, and hence we do not believe there was reversible error in giving plaintiff's instructions with reference to express warranty, and in denying defendant "Corporation's" instructions relating to implied warranty where the buyer relies upon the seller's skill and judgment. As to counterclaimant's instruction purporting to cite the elements of damage upon an implied warranty as to equipment and appliances furnished, no authority has been cited and our research reflects that the elements attempted to be stated are not correct. Defendant and counterclaimant also assert that there was error to modify certain of its instructions by interlineation. No authority is cited and we have found none which hold that the fact that the instruction

has been interlined by the court makes the giving of the instruction reversible error.

■■■ Counterclaimant contends that the court erred in its refusal to admit certain exhibits into evidence: refused Exhibit #6 is a statement for the cost of moving fixtures when the kitchen was enlarged; refused Exhibit #24 is for appliances purchased approximately two and one-half years following the completion of the work; and refused Exhibits #22 and #23 are statements from the plaintiff corporation but no argument is made to show their relevance, and we find no reversible error in the court's action with regard to such exhibits.

Upon petition for rehearing, defendant Jack Weiner urges that this court failed to consider his arguments upon the contention that the trial court erred in denying his motion to withdraw Count II of the complaint at the close of all of the evidence, and admitting into evidence plaintiff's Exhibits #14 and #15. That count and such exhibits concern the issue of an account stated between the plaintiff and Jack Weiner. It is urged that there is no evidence which supports the allegations of the count or plaintiff's instruction #12 upon the issue.

The Abstract discloses that the defendant Jack Weiner and his accountant testified that they met with plaintiff and his attorney to review the accounts of the several parties. The accountant testified that they met several times for such purpose and that he prepared certain work papers upon the accounts which are in evidence. Each of the questioned exhibits refers to a meeting at which the account was purportedly determined. We cannot agree that there is no evidence upon the issue of an account stated as to Jack Weiner.

The sufficiency of the evidence to go to the jury upon the issue, and the admissibility of the exhibits in question, have been discussed at length in the opinion as it

relates to the defendant corporation. We conclude that the trial court did not err in denying the motion to withdraw Count II, or in giving plaintiff's instruction #12.

The several judgments of the trial court are affirmed.

CRAVEN and SPIVEY, JJ., concur.