(No. 26871.—

HARRY JOSEPH, Receiver, Appellee, *vs.* EDWARD CARTER, Appellant.

*Opinion filed March 16, 1943.*

Frank P. Mies, and Ode L. Rankin, for appellant.

Perlman, Goodman, Hecht & Chesler, (Theodore E. Rein, Morton C. Chesler, and Maurice Fedotin, of counsel,) for appellee.

Mr. Chief Justice Stone delivered the opinion of the court:

A judgment by confession, in the sum of $2191.82, was, on November 28, 1940, entered in the municipal court of Chicago, against appellant, Edward Carter, and Eva Ruby Raulston Carter, his wife, on a judgment note given to the Kenwood National Bank in the sum of $1250, dated December 14, 1928, and due in thirty days. Appellant, Edward Carter, on December 24, 1940, filed a petition to vacate the judgment as to him, which petition was allowed, and the cause was heard by the court without a jury. The issues were found for defendant Edward Carter and the judgment vacated as to him. His wife appears not to have sought vacation of the judgment. On appeal to the Appellate Court the judgment of the municipal court was reversed, and the cause remanded with directions to enter judgment against appellant as originally entered, for the sum of $2191.82. The cause is here on leave to appeal granted.

The note provided that thirty days after date "we jointly and severally, promise to pay to the order of Kenwood

National Bank of Chicago, Twelve Hundred Fifty # ——
Dollars" etc. The note also provided: "In case of the
insolvency of the undersigned, any indebtedness due from
the legal holder hereof to the undersigned may be appro-
priated and applied hereon at any time as well before as
after the maturity hereof." The note also stated that the
undersigned had deposited with the bank, as collateral se-
curity for the note and any other liability, "the following
property, viz: $1250.00 1st Mtg. With the right on the
part of the said Bank or the legal holder hereof from time
to time to call for additional security of such kind and
value as will be satisfactory to said Bank or the legal holder
hereof." The note also provided that in case of failure to
respond with additional security or in case of depreciation
in value of collateral, the whole of the note should be
deemed payable at the election of the legal holder thereof,
"with full power in said Bank or the legal holder hereof
on maturity thereof, either by its terms or by election as
aforesaid, or on the non-payment of any of the other lia-
bilities above mentioned, to at any time and from time to
time sell, assign and deliver the whole of said property
and all additions thereto and substitutes therefor, or any
part of said property, additions and substitutes, at any pub-
lic or private sale, at the option of the bank or legal holder
thereof, and without advertising the same, and without
notice to the undersigned. * * * Said bank or legal
holder hereof is hereby authorized and empowered at any
time to apply the payment of any liability or liabilities,
whether the same be due or not, of the undersigned, to
said bank, or to the legal holder hereof, (including any
liability or liabilities of any partnership created while the
undersigned may have been or be. a member thereof,)
whether the same be due or not, all property, real and per-
sonal, of every kind and description, including balances,
credits, collections, moneys, drafts, checks, notes, bills or
accounts, (whether on hand or in transit,) of the under-

signed." There followed a power of attorney to confess judgment. It is conceded no payments were made on the note by appellant but the evidence shows that on January 26, 1931, the note then being past due, the sum of $238.10 in the private account of Eva Ruby Raulston Carter was applied by the bank and credited on the note.

The defense was the ten-year statute of limitations. The only question in the case is whether the application by the bank of Mrs. Carter's private account tolled the running of the statute. It is conceded that if it did not, the judgment of the municipal court was right.

The Kenwood National Bank, (later the Hyde Park-Kenwood National Bank,) went into receivership, and the judgment in this case was secured by the receiver of that bank. It is claimed by the appellee, receiver, that the application of the deposit of Carter's wife to the payment of the note, tolled the running of the Statute of Limitations, and therefore judgment was secured before the statute had run. The answer to the petition to vacate the judgment and open up the proceeding, stated that the application of the account of Carter's wife to the note was made with the knowledge and authority of Carter. Inspection of the note shows clearly that the authority to apply credits or deposits of the makers was conditioned upon the insolvency of the makers. There is no evidence of such insolvency and no reliance is made upon that provision of the note.

Appellee contends that the provision contained in that part of the note having to do with collateral and securities, granted authority to the bank to apply the deposits or credits of either or both makers, as the agent for each maker in so doing. As to this contention two observations must be made. Mrs. Carter's account was not collateral to the note, and while it is conceded that the bank possessed power under ordinary bank usage to apply her account on payment of the note, the question is whether such applica-

tion constitutes a renewal of the note on the theory that it revived the promise.

Appellee's testimony is to the effect that an officer of the bank asked appellant if it would be all right to make the application of his wife's account to the note, and that he replied it would. This he denies, but the Appellate Court found as a matter of fact that "the evidence appears to indicate that he did consent." Appellee relies upon the language in that portion of the note relating to collateral, reading as follows: "Said bank or legal holder hereof is authorized or empowered at any time to apply the payment of any liability or liabilities, whether the same be due or not, or the undersigned, to said bank, or to the legal holder hereof, * * * whether the same be due or not, all property, real and personal, of every kind and description, including balances," etc. This language, as it appears in the note, can scarcely be said to be intelligible unless it can be said to relate to other liabilities of the makers of the note, the payments on which could be applied to this particular indebtedness. Aside from the fact that the clause relates to securities put up or which might be put up with the bank, it can scarcely be said to be an authorization to apply credits belonging to one of the makers of the note to the payment of this liability, since the subject matter referred to is "any liability or liabilities" of the makers. The subsequent language of that clause in the note must be held to refer to the same subject matter, *i. e.* "the liability or liabilities" of the makers, and, as indicated, cannot be construed as intelligible except as authority to apply payments made on other liabilities of the makers, to the payment of this note. There is no evidence of other liabilities.

The Appellate Court was of the view that the word "to" should be inserted so that the language should read, "the said bank or legal holder hereof is hereby authorized and empowered at any time to apply *to* the payment of any liability or liabilities," etc. We are of the opinion that

such construction is erroneous. Courts have no authority to make a new contract for the parties. To supply the word "to" clearly changes the contract. We are of the opinion that under the instrument itself the application of Mrs. Carter's private account to the payment on this note did not, in the absence of an authorization and consent, toll the running of the statute so far as appellant is concerned.

The question then arises whether appellant, by his action, so authorized the payment on this note as to toll the running of the statute. Section 16 of the Limitations Act, (Ill. Rev. Stat. 1941, chap. 83, p. 1972,) provides that if any payment or new promise to pay shall have been made, in writing, on any bond, or note, within or after the running of the statute, then an action may be commenced thereon at any time within ten years after the time of such payment or promise to pay. The rule is recognized, however, that such provision of the statute does not mean that the payee of the note may endorse payments thereon, which were not made by anyone authorized to make them, and so toll the running of the statute. *Willett* v. *Maxwell,* 169 Ill. 540.

In *Kallenbach* v. *Dickinson,* 100 Ill. 427, it was held that one joint maker of a note cannot, by payment thereon or any other act, stop the running of the Statute of Limitations against the other joint maker, unless it appears that the party making the payment was the agent for that purpose. This is also the rule as announced in *Waughop* v. *Bartlett,* 165 Ill. 124. And so in *Boynton* v. *Spafford,* 162 Ill. 113, it was also held that payment by one joint debtor, or extension procured by him without knowledge or subsequent ratification of the other, will not operate to bind such joint debtor.

While the issue of fact as to conversations between the bank officers and Carter, appellant, was determined by the Appellate Court, as we have indicated, there is no evidence that Carter was authorized either as Mrs. Carter's agent or otherwise, to consent to the application of the balance of her account to a payment on the note. It cannot be said

that Mrs. Carter made a payment on this note, for as the record shows, the bank merely appropriated the fund to the payment without her knowledge or consent, and so far as the record shows, there was no ratification by her. Payment, to toll the statute, must be made by the debtor and not by the creditor. Nothing in the conversations between the bank officers and the appellant, as shown by this record, brings this case within the rule of authorized agency on his part.

The right of the bank to set off a deposit against liability of the maker of the note is generally recognized and exists irrespective of any authority granted by the maker, (*Coates* v. *Preston,* 105 Ill. 470,) but the exercise of such right cannot, of itself, toll the statute. (*Brooklyn Bank* v. *Barnsby,* 197 N. Y. 210; *Pessemeir* v. *Zellar,* 144 Kan. 726, 62 Pac. (2d) 882.) While it may be said that there was a mutuality of accounts as between the bank and Mrs. Carter which would permit set off of her deposit against her liability on the note, there is no evidence of such mutuality between the bank and appellant in respect to her account. Carter had no control over his wife's account, nor could he authorize payment to be made therefrom on her account unless authorized so to do as her agent. There is no evidence of such agency.

Payment resulting in law in a new promise which would take the case out of the Statute of Limitations, is only that designedly made as a payment upon the note. There must be an actual and affirmative intention to make such payment before a promise can be inferred. (*Lowery* v. *Gear,* 32 Ill. 383.) It is clear from this record that Carter had no authority to make such payment. His consent, if it was given, was without any such authority. It is clear he made no payment on the note. Although it is argued that after that application had been made he later promised to pay, still, as the payment was not made by him, a new promise to pay this note, to hold him liable and to toll the statute as to him, would necessarily be in writing. (Limitations

Act, sec. 16.) Nor could Carter give the bank any authority as his agent or as the agent of Mrs. Carter to make this payment. We are of the opinion, therefore, that the application of the bank deposit of Mrs. Carter did not, under the facts of this record, constitute such a payment by appellant as tolls the Statute of Limitations. The judgment of the Appellate Court is reversed and the judgment of the municipal court is affirmed.

*Appellate Court reversed; municipal court affirmed.*