Oscar H. Wilke, Inc., a Corporation, Plaintiff-Appellee, v. Philip Vinci, et al., Defendants, and Imperial Real Estate and Insurance Agency Co., Inc., a Corporation, Defendant-Appellant.

Gen. No. 52,273.

First Judicial District.

May 29, 1968.

Kane and Kane, of Chicago (Edward E. Kane, of counsel), for appellant.

Greenstein and Solotke, of Chicago (Harry S. Greenstein, of counsel), for appellee.

STOUDER, J.

Oscar Wilke, Inc., Plaintiff-Appellee, brought this action in the Circuit Court of Cook County against Philip Vinci, Imperial Real Estate and Insurance, Inc. and Northwestern Savings and Loan Association, Inc., seeking to recover for lathing and plaster work. The court sitting without a jury dismissed the action as to Northwestern but entered judgments in the amount of $3,210 against each of defendants Vinci and Imperial and also entered a separate judgment in the amount of $120 against defendant Vinci. Only Imperial has appealed.

Defendant Vinci, a builder and developer, purchased a tract of vacant land in the Park Ridge area, financing such purchase with a land loan from Northwestern. Vinci was also building six houses on the property, financing each with a separate construction loan with Northwestern. The Plaintiff, Wilke had contracted with Vinci to do the plastering work on such houses.

Vinci became in arrears on his loan payments to Northwestern and at the urging of Northwestern to remedy this situation, defendant, Vinci, in April, 1964, borrowed $20,000 from his attorney Limperis. To secure the loan Vinci conveyed all of the property including the lots upon which were located the six partially completed houses to Limperis by quitclaim deed.

At the suggestion of Northwestern that Imperial might be able to help Vinci in the sale of his houses, Vinci met with Imperial in the fall of 1964 and at that time gave Imperial a thirty-day exclusive listing contract for the sale of the houses. Several offers were secured but no sales were made because Vinci deemed the price inadequate. Commencing in November, 1964, there were meetings to explore the possibility of an "as is" sale of the property to Imperial. At this time all of Plaintiff's lathing and plastering work had been completed. Although no written contract was ever entered into, the negotiations were successful and the transfer was concluded either at a meeting in December, 1964 or January, 1965.

The Plaintiff brought this action in June, 1965, alleging that Imperial had orally promised to pay the unpaid trades for work done on the partially completed houses. In seeking to reverse the judgment of the trial court against it Imperial argues the evidence is insufficient to support the trial court's conclusion that it had orally promised to pay Wilke's claim. Further, even if the evidence were sufficient to support the conclusion that an oral promise was made, such promise is unenforceable under the Statute of Frauds, chapter 59, section 1, Ill Rev Stats 1963.

The evidence as to whether an oral promise was or was not made centers around the meetings which took place in Northwestern's offices commencing in November, 1964, and, in particular, two meetings, the first of which took place in November and the second either in December or the following January. Present at these meetings were Limperis, Roppolo and Prendergast, major shareholders and officers of Imperial, Moltz, Imperial's attorney, and representatives of Northwestern. The evidence is conflicting as to Vinci's presence. Neither plaintiff Wilke nor any of the other trades was present at any of the meetings.

191

At the meeting in November, Limperis indicated he wanted $24,000 for a quitclaim deed conveying the property to Imperial, all of the expenses of the transfer to be borne by Imperial. No written contract was contemplated. At this meeting it was determined that further study and investigation of the proposed project was required. Moltz, attorney for Imperial, was to secure a report of title. Roppolo and Prendergast wanted to consider the economic feasibility of the project and for that purpose wanted time to make appropriate investigations including the amounts needed to complete the houses, the funds available in the construction loan accounts and other related matters.

The report of title showed only one mechanic's lien for unpaid concrete work upon the partially completed houses. An examination of the loan file indicated the various balances due, the amounts paid out and the amounts available from such loans to complete the houses. In such loan files were requests for payment by Vinci as work was completed, supported by lien waivers relating thereto, including waivers from Wilke. Wilke's claim is based on extra work not included in the contractor's estimates and in part upon work for which waivers were given but no payment was received. It also appears that Imperial contacted the building trades involved in the construction of the houses to verify the amounts which were due such trades.

At the second meeting, probably held in January of 1965, the transfer was consummated by delivery of quitclaim deeds from Limperis and his wife and Vinci and his wife conveying the property to a trust established for the benefit of Imperial. Limperis received his check for $24,-000. Vinci received no money. Both Vinci and Limperis testified that at this meeting Imperial orally agreed to pay the unpaid building trades. In support of their testimony they asserted that six accounting sheets previously prepared by Vinci were produced, exhibited and exten-

sively discussed by the parties. It also appears that such accounting sheets may have been presented, discussed and copied at earlier meetings. Each of the accounting sheets relates to one of the partially constructed houses and lists names and amounts in two categories. The first, "Trades Completed and Not Paid" and the second, "Trades to Complete Building." Wilke's name appeared under the first category and the total of the amounts as listed on each of the six sheets is the amount which plaintiff sought in this case for which judgment was entered. According to Limperis an adding machine tape was made listing the total of the amounts for each category. Roppolo and Prendergast testified that the sheets were casually laid on the table but they did not consider them. They testified they only agreed to pay any lien claims filed and the amounts due as revealed by the loan files for which no lien waivers had been secured. The testimony of a representative of Northwestern tended to corroborate the position of defendant Imperial, but it also appears that such representative was not present during all of the conversations which took place.

On February 1, 1965, Vinci sent a letter to each of the unpaid trades including Wilke, indicating that the property had been sold to Imperial and that they should look to Imperial for payment. Wilke testified that he had called at the offices of Imperial on two occasions and on each occasion had been promised payment. Imperial admitted that Wilke had called at its office, denied that any promise of payment had been made and indicated that the calls were for the purpose of bidding on other plastering jobs. A tradesman (supplier of cabinets) unpaid at the time of the transfer, testified that in a telephone conversation with Roppolo of Imperial in November, 1964, the latter had told him that in connection with Imperial's taking over of the property all subs would be paid.

██ It is evident from the foregoing summary of the evidence that there is conflict in the evidence. The trial court was not required to reconcile such conflicts solely on the basis of an assertion of an oral promise and a denial thereof by equally credible witnesses. Most significantly the testimony of the witnesses must be viewed in the context of the transaction in which they were involved. The court was entitled to determine the reasonableness and hence the credibility of the testimony in light of the transaction and the conduct of the parties. Under such circumstances we believe the conclusion of the trial court that an oral promise was made to pay unpaid tradesmen is amply supported by the evidence.

██ Defendant next argues that such an oral promise is the promise to pay the debt of another and hence unenforceable under the Statute of Frauds. We find no merit in such argument. Chapter 59, section 1, Ill Rev Stats 1963, insofar as is pertinent provides, ". . . no action shall be brought, . . . whereby to charge the defendant upon any special promise to answer for the debt, . . . of another person, . . . . If an oral promise to pay the preexisting debt of another be supported by a new and valuable consideration such oral promise is not merely a promise to pay the debt of another it is regarded as an original undertaking. 20 Illinois Law & Practice, Frauds, Statute of, §§ 23 and 25. Where such promisor has received benefit upon the strength of such promise, such promise is and should be enforceable. Where the transferee of property promises to pay debts of the transferor, such promise is a new and adequate consideration, and the promise is enforceable. Meyer v. Hartman, 72 Ill 442. This is the rule which we deem applicable to the facts of this case. The principal cases relied upon by the defendant namely, Foremost Ins. Agency v. Pancoe, 16 Ill App2d 371, 148 NE2d 5, and Evans v. Owens, 30 Ill App2d 114, 173 NE2d 850, although correctly stating the

law, are not applicable to this case since, most significantly, neither case involves any transfer of property from the debtor to the promisor or in fact any new consideration.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

ALLOY, P. J. and CULBERTSON, J., concur.