SOFT WATER SERVICE, INC., d/b/a Culligan Water Conditioning, Plaintiff and Counterdefendant-Appellee, *v.* M. SUSON ENTERPRISES, INC., Defendant and Counterplaintiff-Appellant.

First District (1st Division)   No. 61785

Opinion filed June 1, 1976.

Arvey, Hodes, Costello & Burman, of Chicago (Ralph A. Mantynband and Lawrence C. Rubin, of counsel), for appellant.

Bush and Bush, of Mt. Prospect (Robert A. Bush and Richard B. Gould, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Soft Water Service, Inc., doing business as Culligan Water Conditioning (plaintiff) brought action against M. Suson Enterprises, Inc. (defendant), seeking recovery of an unpaid balance for merchandise sold and delivered and on an account stated. Defendant denied liability and filed amended affirmative defenses raising issues of alleged defects in the equipment supplied and of purchase of the equipment by defendant from a third party. Defendant also filed an amended counterclaim alleging that plaintiff had warranted that the equipment was fit for its ordinary purpose but it was actually defective. Defendant claimed setoff against the alleged indebtedness and damages. After trial by the court without a jury, judgment for $3052.50 was entered in favor of plaintiff on the complaint and for plaintiff on defendant's counterclaim. Defendant appeals.

In this court, defendant urges that the trial court erroneously

determined that plaintiff had contracted with an agent of defendant for sale of the equipment; plaintiff failed to introduce competent evidence to prove indebtedness from defendant and defendant is entitled to recover damages on its counterclaim. The brief of plaintiff (appellee) lacks a statement of "Points and Authorities" and therefore fails to comply with Supreme Court Rule 341(e)(5). (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(5).) However, it appears that plaintiff contends that defendant ratified the transaction with knowledge of the facts; the proof is ample to show liability of defendant to pay for the equipment and to prove an account stated; finally defendant failed to prove that the equipment furnished was not fit for the ordinary purpose for which it was sold. Since the issues on the complaint and on the counterclaim are logically divisible, we will consider them separately.

## I.

Plaintiff is in the business of manufacturing and selling water softening equipment. It is undisputed that during the latter part of 1972 plaintiff sold and delivered three water conditioning systems for installation in three apartment buildings known as 8801—09—15 Golf Road in Niles, Illinois. At the same time, plaintiff sold a chlorination system and filter for installation at the Blue Ribbon Stables in Deerfield, Illinois. In this transaction, plaintiff dealt exclusively with William Garbell, who was associated in some manner with Builder Plumbing Company. Apparently defendant had retained the services of Garbell to install the water systems in the three apartment buildings and at the stables. The Builder Company appears to have been defunct at the time of trial.

The testimony in behalf of defendant is that Builder and Garbell were hired to install the water softening systems but that Garbell was never expressly authorized to enter into contracts for defendant and was never an employee or agent of defendant. On October 10, 1972, plaintiff issued three written proposals for all of the equipment, all signed by Garbell. Those pertaining to the Blue Ribbon Stables were signed "For M. Suson Enterprises by Wm. Garbell" and the one for the apartment buildings was signed by Garbell above the descriptive designation "By owners or owner's agent." The total amount of the proposals for the stables was $610. The price shown for the equipment for the apartment buildings was $1776.25 each, being a total of $5328.75, grand total $5938.75. It is undenied that the equipment in question was all furnished by plaintiff and was delivered to the three apartment buildings and to the stables in accordance with these proposals and there installed.

Upon completion of installation, plaintiff sent four invoices to defendant at 8801 Golf Road, in Niles. These invoices pertained to the Blue Ribbon Stables and to each ot the three apartment buildings. The

invoices showed the date of furnishing the equipment, a short description of the equipment and the price corresponding to the amounts contained in the proposals as above specified. There is no evidence of any bill or invoice of any kind having been sent by plaintiff to Garbell or to the Builder Company.

On March 23, 1973, a letter was sent by plaintiff to defendant itemizing each of the four amounts due and the total thereof, as above shown. The letter stated that prior requests had been ignored and that the account was 4 to 6 months overdue. It suggested immediate attention to the matter and ended, "Please contact us directly should you have any questions." Defendant has objected to the introduction of a copy of this letter as will be later shown.

About June 15, 1973, defendant sent its check to plaintiff in the amount of $2886.25. The check had a voucher stub appended to be detached and retained. It is admitted that defendant caused this voucher stub and check to be prepared and sent. The designation on the stub shows payment for the stables installation of $610 and for one of the apartment buildings of $1776.25, both marked "In Full" and payment pertaining to another of the apartment buildings of $500 marked "A/C." Morris Suson, principal officer, director and major stockholder in defendant, admitted preparation and sending of the check and stub. He testified that he received no invoices from plaintiff but that he did receive bills from Builder Company and that, "We paid our bills." He also testified that the amount of the check which he sent to plaintiff, "was the balance due to Builder * * *."

Plaintiff also produced a series of four ledger cards which appear upon examination to be carbon copies of all of the typewritten matter upon the four invoices above described. These ledger cards thus show the identical figures reflected in the invoices. They also reflect original entries by typewriter showing the payments on account represented by the check stub as above set forth. Objection by defendant to these ledger sheets will be later considered.

■■ The first issue for determination is the problem of agency. There is no evidence of express authority ever having been granted by defendant to Garbell for the purchase of this equipment. The parties stipulated that the equipment in question was furnished by plaintiff and delivered to and installed upon the property.

In our opinion, the record here shows proof of ratification of the transaction by defendant. The pertinent legal authorities are clear that "[r]atification need not be express; it may be implied from the conduct of the parties." In addition, Illinois cases are clear that retaining the benefits of a transaction with full knowledge of all material facts is tantamount to ratification. These principles are stated and supported by ample citation

of legal authorities in *Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1973), 12 Ill. App. 3d 362, 365, 299 N.E.2d 601.

In urging lack of ratification, defendant relies upon the testimony of Morris Suson in which he denied that defendant ever received invoices from plaintiff. The witness also stated that he received bills from Builder Company which were paid. His testimony was that the check and stub which he sent plaintiff was the amount due to Builder. Even though no objection was interposed to this testimony, it is hardly factual and is a conclusion on the part of the witness. Also, there is no contract, check stub, ledger book or any document of any kind to support the theory that defendant was making the payment received by plaintiff as payment to the contractor. The record is certain that these facts were never communicated by defendant to plaintiff by letter or in any other manner.

Generally speaking, the existence of ratification of the act of another person which may be depended upon to create the relationship of principal and agent is an issue of fact. The record here reflects an issue of credibility of the witnesses as regards the conflicting positions taken by the parties. Citations are not necessary to show that we may not set aside the result reached by the trial court on this factual issue unless we determine that the result reached is contrary to the manifest weight of the evidence.

We have already expressed the opinion that this finding of ratification by the trial court is strongly supported by a preponderance of the evidence. Defendant undoubtedly received the benefit of the equipment installed upon the property. The evidence produced by plaintiff shows that defendant had full knowledge of all of the pertinent facts. The copies of invoices directed to defendant were received in evidence. There is testimony without objection that these are the type of invoices sent out by plaintiff in the normal course of business. The same also appears from the letter sent by plaintiff to defendant on March 23, 1973. This letter contained a full statement of the transaction and of the balance due. Most important of all, the check directed to plaintiff by defendant is a complete admission of the knowledge defendant had of the prices of the various items charged by plaintiff and of the fact that payment was due thereon. This payment, together with the endorsement on the stub, constituted, in our opinion, strong evidence of a full ratification of the transaction. Morris Suson testified that he had never received invoices from plaintiff. If this were true, it would be most difficult to understand from the record before us how he could have known the exact price per item of the equipment furnished to the stables and to the apartment buildings. There is no explanation compatible with the evidence in this record other than ratification by defendant.

■■ There is an alternative basis for imposing contractual liability

upon defendant here. Plaintiff's complaint alleged an account stated between the parties. Defendant urges that there cannot be liability upon an account stated because an account stated cannot be made an instrument of creation of original liability but only determines the amount of the debt where a liability exists. *Pope County State Bank v. U. G. I. Contracting Co.* (1932), 265 Ill. App. 420, 423, 424, cited by defendant.

The difficulty with this contention is that, as we have above demonstrated, there was an original liability on the part of the defendant to pay plaintiff the amount due. An account stated has been defined as an agreement between parties who have had previous transactions that the account representing these transactions is true, so that the balance is correct, together with a promise which may be express or by implication for payment of this balance. See *Malkov Lumber Co. v. Wolf* (1971), 3 Ill. App. 3d 52, 54, 55, 278 N.E.2d 481.

The evidence in the case before us shows the sending of invoices to defendant and then a written demand for payment. No objection was ever made by defendant to the account as evidenced by these documents. Defendant then issued its check in which it paid two of the bills in full and made a payment on account for another. The symbol "A/C", which defendant placed upon its check stub sent to plaintiff, is common in business and is extensively used by bookkeepers. It identifies the transaction in which the check was issued. (Black's Law Dictionary 4 (4th ed. 1951).) This receipt and retention by defendant without objection of the invoices and demand for payment as submitted by plaintiff, together with the payments made some two months later, are sufficient to constitute both recognition by defendant of the correctness of the account and an implied promise to pay the balance due. (See *Malkov,* 3 Ill. App. 3d 52, 55.) In our opinion, the theory of account stated is a proper alternative theory upon which liability of the defendant may be predicated.

██ Defendant interposed objections to certain exhibits. Defendant objected to the photocopy of the letter addressed to it by plaintiff and allegedly sent on March 23, 1973, on the ground that the copy was not the best evidence. The testimony is that this document was a copy of a letter dictated by plaintiff's general manager. He testified that the letter was placed with the day's mail to be sent out in the evening. Defendant denied receipt of the original and its counsel advised the court that they were not in possession thereof. Thus, notice to produce the original would have been a futile act and need not have been required as a condition precedent to the use of the secondary evidence. *(First National Bank & Trust Co. v. Kirshbaum* (1931), 263 Ill. App. 537, 543.) Also, considering the entire record, and particularly the invoices, the ledger sheets, the check stub and the letter itself, each dovetails with the other and

convinces us that the letter was sent and received. The proof was sufficient, in our opinion, to make the competency of the exhibit an issue of fact to be determined by the trial court. We agree with the result which the trial court reached and find that the exhibit was properly received in evidence. *City of Chicago v. Supreme Savings & Loan Association* (1975), 27 Ill. App. 3d 589, 592, 327 N.E.2d 5.

■■ As regards the copies of ledger sheets above described, which were actually carbon copies of the typewritten material on the invoices received in evidence without objection, defendant objected in the trial court, on the sole ground that proper foundation had not been laid for the introduction of this material under section 3 of the Evidence Act. (Ill. Rev. Stat. 1973, ch. 51, par. 3.) This objection was properly overruled by the court since the statute by its terms applies only where the claim "is founded on a book account or any other record or document * * *." (See *Pope v. Kaleta* (1967), 90 Ill. App. 2d 61, 69, 234 N.E.2d 109.) The suit here is not founded on a book account, record or document. Plaintiff's complaint sought recovery for goods and material delivered and also upon an account stated. We conclude that the trial court acted correctly in ruling on the exhibits.

In view of the above analysis, it follows that defendant was indebted to plaintiff in the sum of $3052.50 being the amount found due by the trial court. It remains to consider the issues raised by defendant's counterclaim.

## II.

In its amended first affirmative defense, defendant alleged that the equipment furnished by plaintiff did not function properly but caused particles to be discharged into the water system of the building at 8801 Golf Road with damaging results. Defendant alleged that it was the beneficiary of an implied warranty by plaintiff that the equipment was fit for the ordinary purpose for which it was intended. Defendant's amended counterclaim on the same theory prayed allowance of damages to defendant in the amount of $4360. Suson testified that the water systems in this apartment building did not function properly but caused the faucets to run continuously. In February 1973, he called plaintiff but plaintiff refused to fix the equipment. Defendant thereupon hired F. & G. Plumbing Contractors, Inc. to rectify the situation and in due course received a bill of $4360 for its services which was paid in full.

Eugene Galinski from the plumbing company testified that he had been in the plumbing business for 20 years during which time he had examined 3000 to 4000 plumbing systems. He and his men had worked on 30 Culligan commercial water softeners. He was a qualified journeyman plumber and could take apart and reassemble a Culligan water softener.

Galinski further testified that the faucets ran constantly because particles or pebbles inside the water lines prevented these outlets from being closed. Also, the toilets would not flush because of a similar problem. He found no defect in the installation of the equipment, which had been properly performed. The witness expressed the opinion that the particles came from the water softener and that the problem was faulty installation of a part inside of the mechanical structure of the water softener. He and his men repaired the softener, drained and flushed out the hot water lines servicing 72 apartments and replaced 68 faucet seats. When this task had been completed the water system worked properly. Only one item of $70 was not attributable to the Culligan softener. No contrary testimony of any kind was offered on this matter by plaintiff.

Under the applicable provisions of the Uniform Commercial Code, every agreement for the sale of goods includes an implied warranty of merchantability as regards the fitness of the goods for the ordinary purpose for which they are used. (Ill. Rev. Stat. 1975, ch. 26, par. 2—314.) This implied warranty was applicable upon the sale of the goods from plaintiff to defendant. Defendant alleges that it was a third-party beneficiary of the contract for sale and therefore entitled to depend on the implied warranty. In view of the result reached by the trial court, as above affirmed, that defendant ratified and adopted the purchase of the goods from plaintiff, it follows necessarily that the defendant as buyer is entitled to depend upon the implied warranty. The third-party beneficiary issue need not be considered.

■■ The evidence shows that the expert witness called by defendant was a qualified person and the result of his testimony should properly be the imposition of liability upon plaintiff by reason of the implied warranty, particularly in view of the complete absence of any explanation, defense or contradiction by plaintiff. Testimony by a credible witness neither impeached nor contradicted cannot be disregarded by the trier of fact. (*Perkins Pipe & Steel Co. v. Acme Valve & Fitting Co.* (1971), 2 Ill. App. 3d 338, 340, 276 N.E.2d 335; *Ryan v. Goldblatt Bros.* (1960), 24 Ill. App. 2d 239, 242, 164 N.E.2d 280, *leave to appeal denied*, 18 Ill. 2d 628, and Cleary, Handbook of Illinois Evidence §4.7, at 54 (2d ed. 1963).) We therefore conclude that the finding of the trial court against defendant on its counterclaim and in favor of plaintiff is manifestly contrary to the evidence and it is accordingly reversed.

It follows that defendant is entitled to recover on its counterclaim the amount of the payment attributable to the breach of warranty by plaintiff, being $4290, against which the judgment allowed plaintiff for $3052.50 should be offset, leaving a net amount due defendant of $1237.50. The judgment in favor of plaintiff on defendant's counterclaim is

accordingly reversed and the cause is remanded to the trial court with directions that the judgment entered on December 19, 1974, in favor of plaintiff and against defendant on plaintiff's complaint for $3052.50 is to be satisfied of record and judgment is to be entered on the counterclaim in favor of defendant and against plaintiff for $1237.50.

Judgment on counterclaim reversed and cause remanded with directions.

BURKE and O'CONNOR, JJ., concur.