MOTIVE PARTS COMPANY OF AMERICA, INC., Plaintiff-Appellant, *v.* SHELDON R. ROBINSON, Indiv. and d/b/a Robinson Automotive Supply Company, Defendant-Appellee.

First District (5th Division)   No. 76-513

Opinion filed October 7, 1977.

936

Arnstein & Levin, of Chicago, for appellant.

Gerald B. Saltzberg, of Fishman & Fishman, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal from a judgment finding defendant not liable for goods allegedly purchased by him. Plaintiff raises two issues on appeal: (1) whether defendant's failure to object to statements of account mailed to him constitutes an acceptance of the accuracy of the figures listed thereon and a promise to pay the balance due; and (2) whether an executory accord was created during a conversation between defendant and one of plaintiff's employees. We affirm.

Plaintiff is a wholesale dealer in automotive parts and defendant is a distributor of such parts. Each business day morning defendant would determine the extent to which he could fill his customers' orders from his small parts inventory. He would then order parts he could not supply from plaintiff and other suppliers. Whenever he ordered parts from plaintiff he would telephone plaintiff's Milwaukee Avenue store and speak to the store manager or one of several other store employees. The ordered items would then be drawn from the store's stock and placed on a delivery counter. Plaintiff kept a charge plate at the store which reflected defendant's name and address. The store manager or one of the store's employees would use this plate in the preparation of invoices. After the charge plate was used to imprint defendant's name and address on a three-copy, carbon interleaved invoice, the items ordered were listed and the white copy of the invoice was placed on the delivery counter with defendant's order. Either defendant or his delivery driver would go to plaintiff's store, find the parts ordered and the white copy on the delivery counter, compare the parts with the items listed on the white copy, mark the white copy to indicate that the items listed were actually received, take the parts and the white copy and deliver the parts to customers. The store kept the yellow copy of the invoice and sent the pink copy to plaintiff's central office. At plaintiff's office information on the pink copy was entered in an accounts receivable ledger. Using this ledger plaintiff's employees prepared a statement every month showing the status of defendant's account as of the 25th of the month and mailed this statement to defendant. Defendant denied receipt of these monthly statements. After receiving the goods he ordered from plaintiff, defendant would place the white copy of the invoice in a file designated by plaintiff's name. Once a month he corrected pricing errors, deducted trade discounts and totaled the invoices. Then he would prepare a check for the sum he

arrived at through this procedure and deliver it to plaintiff's store between the 20th and the end of the month.

Defendant testified that he had paid for all of the goods he ordered and received from plaintiff. Plaintiff claims a balance due of $8,643.09. Following a bench trial the trial court concluded that plaintiff had proved a statement of account but not an account stated. It found that plaintiff had offered no proof of delivery of parts in the alleged sales except an account and copies of invoices bearing no indication of receipt of the merchandise listed thereon. It stated that this proof did not even warrant an assumption of delivery. Accordingly, plaintiff's proof of delivery was found to be insufficient to create liability.

OPINION

The first issue raised by plaintiff on appeal is whether defendant's failure to object to the statements of account that were mailed to him constitutes an acceptance of the accuracy of the figures listed thereon and a promise to pay the balance due.

Plaintiff appears to argue that if a creditor mails a statement of account to a debtor and the debtor retains it without objection for more than a reasonable time, assent to its correctness is implied and an account stated is created.

■■■ The concept of "account stated" has been explicated in several definitions. For example, it has been defined as an agreement between parties who have had previous transactions of a monetary character that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance. (See, *e.g.*, *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 1040, 351 N.E.2d 264; *Malkov Lumber Co. v. Wolf* (1971), 3 Ill. App. 3d 52, 54, 278 N.E.2d 481; *Wolford Morris Sales, Inc. v. Jack H. Weiner & Organ Grinder, Inc.* (1966), 75 Ill. App. 2d 238, 249, 221 N.E.2d 308; *Pure Torpedo Corp. v. Nation* (1945), 327 Ill. App. 28, 32, 63 N.E.2d 600.) It has also been defined as an agreement between two parties which constitutes a new and binding determination of the balance due on indebtedness arising out of previous transactions of a monetary character, containing a promise, express or implied, that the debtor shall pay the full amount of the agreed balance to the creditor. (See *Canadian Ace Brewing Co. v. Swiftsure Beer Service Co.* (1958), 17 Ill. App. 2d 54, 60, 149 N.E.2d 442.) The agreement mentioned in these definitions must, of course, manifest the mutual assent of the debtor and creditor. (See *Canadian Ace Brewing Co.*) The meeting of the parties' minds upon the correctness of an account is usually the result of one party rendering a statement of account and the other party acquiescing thereto. (See *Pure*

*Torpedo Corp.*) The form of the acquiescence or assent is immaterial, however, and the meeting of minds may be inferred from the conduct of the parties and the circumstances of the case. (See *Pure Torpedo Corp.*, 327 Ill. App. 28, 32-33.) For example, where a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection, the retention of the statement of account without objection within a reasonable time constitutes an acknowledgment and recognition by the latter of the correctness of the account and establishes an account stated. See *Malkov Lumber Co.*, 3 Ill. App. 3d 52, 54-55; *Wolford Morris Sales, Inc.*, 75 Ill. App. 2d 238, 250; *Canadian Ace Brewing Co.*; *Pure Torpedo Corp.*, 327 Ill. App. 28, 33.

The manager of plaintiff's Milwaukee Avenue store, defendant and plaintiff's controller testified at trial. Defendant testified that he owned Robinson Automotive Supply Company and indicated that he had operated this company since sometime in 1968. His business was located at 3720 West Dempster Street in Skokie, Illinois, for approximately five years. In November of 1973, he moved to 5500 West Touhy Avenue in Skokie. From some point during either 1969 or 1970 to June or July of 1974, he purchased goods from plaintiff's Milwaukee Avenue store. When called as an adverse witness and asked if he ever received—at either his old or his new location—monthly statements reflecting purchases from plaintiff and a balance due, defendant said he had never received one. Later, during direct testimony, when asked if he had ever received monthly statements covering the period of October 1972 to August 1974 at his place of business, defendant said he did not remember seeing any of them. On cross-examination he repeated this statement and went on to say that between 1972 and 1974 he was the only recipient of the store's mail.

William Schwartz, plaintiff's controller, testified that there was no company policy of requiring defendant to sign any of the copies of the invoice when items were picked up. He explained that when a pink copy is received at the office, it is posted to the customer's account in plaintiff's accounts receivable ledger. A monthly statement showing all transactions and payments during the month and the balance due is prepared in duplicate from this ledger. The original is mailed to the customer and the copy is kept at the office. Such monthly statements were mailed to defendant's store during the period of October 1972 through August 1974. Reproductions of plaintiff's copies of these statements were admitted into evidence. According to this witness, the original of each of these copies was mailed to the address shown on these copies. Under his supervision each original was folded and put in a window envelope so that defendant's address could be seen through the window. Postage was then applied to the envelopes and they were mailed. The post office never

returned any of these statements to plaintiff's office and defendant never complained about an error on any of them.

■■ ■ Plaintiff's argument relies upon an implicit premise, *viz.*, the presumption that a document properly addressed and mailed is received by the addressee. (See *Dick v. Zimmerman* (1904), 207 Ill. 636, 639, 69 N.E. 754.) Plaintiff appears to allege that defendant began his practice of not paying for all of the parts he purchased at some point in late 1972, and that over the following two years his balance grew until it reached the sum claimed in late 1974. Until November of 1973 defendant was located at 3720 West Dempster Street in Skokie. Beginning with the October 25, 1972, statement and ending with the November 25, 1973, statement, which shows a balance due of $2,606.90, the monthly statements were sent to "3720 Dempster" in Skokie. In November of 1973, defendant moved his store to 5500 West Touhy Avenue in Skokie. Beginning with the December 25, 1973, statement and ending with the August 25, 1974, statement, which shows a balance due of $8,540.80, the monthly statements were sent to "5500 N. Touhy" in Skokie. One of the prerequisites for operation of the aforementioned presumption is a proper address. Since the addresses on the statements in question were not precisely correct, this prerequisite was not precisely complied with. Additionally, defendant testified that he never received any of these statements. Since receipt of these statements is a necessary condition for the existence of the account stated claimed by plaintiff, under these circumstances the existence of the alleged account stated must be regarded as disputed. When the existence of an account stated is disputed, whether it exists is a fact question. (See *State v. Illinois Central R.R. Co.* (1910), 246 Ill. 188, 246, 92 N.E. 814; *Wolford Morris Sales, Inc. v. Jack H. Weiner & Organ Grinder Inc.* (1966), 75 Ill. App. 2d 238, 250, 221 N.E.2d 308; *Pure Torpedo Corp. v. Nation* (1945), 327 Ill. App. 28, 33-34, 63 N.E.2d 600.) Since a bench trial was conducted below, this question was properly resolved by the court sitting as the finder of fact. The court found that no account stated existed. We are not prepared to hold that this finding is against the manifest weight of the evidence. See *Kravis v. Smith Marine Inc.* (1975), 60 Ill. 2d 141, 150, 324 N.E.2d 417; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.

■■ ■ Another flaw in plaintiff's argument is its assumption of the existence of an underlying obligation. Since an account stated raises a new cause of action between the parties, a defense to an action based upon the theory of account stated must relate directly to the claimed account stated and not to matters of anterior liability which are pertinent only to a cause of action upon the original contract, for example, the lack or failure of consideration. (See *Pure Torpedo Corp. v. Nation* (1945), 327 Ill. App. 28, 33, 63 N.E.2d 600; *Dean & Son, Ltd., v. W. B. Conkey Co.* (1913), 180 Ill.

App. 162, 182.) In this connection it has been said that evidence of the original debt is unimportant in an action upon an account stated because the action is founded upon the promise to pay the balance ascertained and not upon the original contract. (See *Dick v. Zimmerman* (1904), 207 Ill. 636, 639, 69 N.E. 754.) However, while the recipient of an account rendered, which through lack of objection on his part has ripened into an account stated, is precluded from raising previous disputes regarding various items of the account as a defense, he is not precluded from impeaching the account stated through the use of evidence which has its foundation in matters of anterior liability and which shows fraud, error or mistake. (See *Pure Torpedo Corp.*; *Rudolph Wurlitzer Co. v. Dickinson* (1910), 153 Ill. App. 36, 41.) Also, the rule that an account rendered and not objected to within a reasonable time is to be regarded as correct assumes that there was an original indebtedness, but there can be no liability on an account stated if no liability in fact exists, and the mere presentation of a claim, although not objected to, cannot of itself create liability. (See *Conley v. National House Furnishing Co.* (1937), 292 Ill. App. 558, 562, 11 N.E.2d 828; *Pope County State Bank v. U. G. I. Contracting Co.* (1932), 265 Ill. App. 420, 423.) In other words, an account stated cannot create original liability where none exists; it is merely a final determination of the amount of an existing debt. See *Conley*, 292 Ill. App. 558, 562-63; *Pope County State Bank*.

Plaintiff's controller testified that he did not know who prepared the invoices at the Milwaukee Avenue store but he knew customers' charge plates were kept there and were accessible to each and every store employee. One copy of each invoice was used by him in making up his accounts but he did not know whether a customer received the goods listed on the copies he used. Moreover, he stated that since none of the invoices were signed, there was no way to tell whether defendant received white copies with his orders; nor was there any way to tell from any of plaintiff's documents or records whether defendant received all of the parts he was billed for.

William R. Hansen, the manager of plaintiff's Milwaukee Avenue store, admitted that between five and eight employees worked full time in the store during the period in question, that these employees sometimes filled defendant's orders and gave the items ordered to either defendant or his driver, and that there is nothing recorded on the invoices in question which shows which orders he gave defendant or defendant's driver. He further admitted that there is no way, other than through the memory of the employee at the counter when parts are picked up, to ascertain whether or not merchandise listed on an invoice was actually given to a customer, and that the store's other employees sometimes used defendant's charge plate to prepare invoices.

■■ We agree with the court below that plaintiff's proof of the disputed transactions underlying the alleged account stated was insufficient. Since an account stated cannot create original liability or exist where there is no original liability, we are not persuaded that the trial court's finding that no account stated existed is against the manifest weight of the evidence.

The second issue raised on appeal is whether an executory accord was created during a telephone conversation between plaintiff's controller and defendant.

Plaintiff asserts that its controller advised defendant of the balance due and defendant agreed to pay this balance during a telephone conversation in June 1974. Plaintiff appears to argue that an executory accord was thereby created.

With reference to this call defendant testified that the controller called him at the store and asked for a check for money owed but did not tell him how much was owed. Defendant stated that his response to the controller was: "I will get one out as soon as I can. I will send the check quickly over to the Milwaukee Avenue store." Following this testimony defendant said he did provide a check thereafter for the total amount of the white copies he then had in his file. Furthermore defendant testified that no one employed by plaintiff ever orally requested a specific sum of money in payment of his account.

■■ If no specific amount was mentioned during this coversation, it would have been reasonable for defendant to have believed that the request for payment was a request for only the balance of the preceding month's invoices. The trial judge did not accept plaintiff's version of the conversation and his finding is not contrary to the manifest weight of the evidence. See *Kravis v. Smith Marine Inc.* (1975), 60 Ill. 2d 141, 150, 324 N.E.2d 417; *Schulenberg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.