FRANCIS SEXTON, d/b/a Sexton Engineering Service, Plaintiff-Appellant, v. KENNETH D. BRACH, d/b/a Brach Investment Properties, et al., Defendants-Appellees.

Third District No. 82—682

Opinion filed March 27, 1984.—Modified on denial of rehearing June 15, 1984.

STOUDER, P.J., dissenting.

Craig M. Armstrong, of Ottawa, for appellant.

James A. Lanuti and Joseph E. Lanuti, both of Lanuti, Martin & Lanuti, of Ottawa, and Daniel H. Pappas, of Niles, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This appeal arises from an action for professional services filed in the circuit court of La Salle County by Francis Sexton, d/b/a Sexton Engineering Service. Named as defendants were Kenneth D. Brach, d/b/a Brach Investment Properties, Leonard Kemnetz and Robert Barker. The circuit court awarded judgment for the plaintiff against defendant Barker, who failed to appear and defend. The circuit court dismissed the action against defendants Brach and Kemnetz holding that the statute of limitations (Ill. Rev. Stat. 1981, ch. 83, par. 16) was a bar to recovery. The plaintiff Sexton seeks our review of that determination asserting that the circuit court was in error.

In the summer of 1972, defendant Kemnetz and defendant Barker entered into a joint venture agreement to purchase and then develop a tract of land in excess of 300 acres in La Salle County to be known

as the "Glenwood Farm" subdivision. In furtherance of that joint venture, in August 1972, defendant Barker orally contracted with Francis Sexton to prepare an annexation plat of the "Glenwood Farm" subdivision. The surveying work for the plat was completed by Sexton in December of 1972. At that time, Sexton presented Barker with the completed plat and a statement for services in the amount of $9,223.52.

Early the following year, in February, defendant Kemnetz contracted to sell the "Glenwood Farm" property to defendant Brach. Kemnetz' first joint venture partner, Barker, was not a party to this contract to sell. Indeed, when Barker learned of the contract to sell, he brought suit against Kemnetz and Brach alleging that his partner was defrauding him of his rights in the original joint venture agreement. That suit was fully tried and resulted in a judgment of the circuit court of La Salle County dated April 14, 1974. The circuit court's judgment found the fraud alleged by Barker in his complaint against Kemnetz. It ordered Kemnetz to hold his one-half interest in the "Glenwood Farm" venture in a constructive trust for the benefit of Barker, subject to certain provisions relating to the payment of money by Barker to Kemnetz which were to be paid so as to compensate Kemnetz for the monies invested by him in the "Glenwood Farm" venture. Barker failed to comply with the circuit court judgment, and a supplemental order was entered denying Barker any right to participate in the "Glenwood Farm" purchase contract. A new joint venture thus arose between Kemnetz and Brach to purchase and develop the subdivision.

After the February 1973 contract between Kemnetz and Brach, Brach approached Sexton for the first time seeking additional survey work to be done on the subdivision project. Sexton was reluctant to undertake additional work, as he had not been paid for the annexation plat completed in December of 1972. Upon receiving Brach's assurance that this bill would be paid, Sexton performed the supplementary survey work at a cost of $180. The revised survey was presented to Brach, and on May 25, 1973, Brach paid $3,000 to Sexton.

No further amounts were paid on the account with Sexton, and in an effort to collect the balance of the account, Sexton brought suit as previously recounted on April 8, 1978. That suit resulted in a judgment against the first joint venture partner, Barker, but the action against Kemnetz and Brach was dismissed by the circuit court by reason of the five-year bar of the statute of limitations. The issue presented for our review is whether the statute of limitations was correctly applied by the circuit court to bar the action against Kemnetz

and Brach.

■ Although the initial work on the annexation plat was completed in December of 1972, more than five years from the date suit was filed, the plaintiff urges that the partial payment on the account owed to the plaintiff on May 25, 1973, constitutes both a recognition by the defendants of the correctness of the account and an implied promise to pay the balance due so as to render the defendants liable to the plaintiff on the theory of account stated. Since an account stated is in the nature of a new undertaking, the plaintiff Sexton asserts that the five-year statute of limitations did not expire until May 25, 1978, or just less than two months after the complaint was filed.

We believe the plaintiff's argument overlooks one necessary requirement to have a valid action for account stated. Specifically,

"[a]n account stated cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed. [Citations.] An account stated only determines the amount of the debt where a liability exists, and cannot be made to create a liability *per se* where none before existed. [Citation.] An action at law on an account stated lies only where there have been transactions previous to the statement of the account which created the relation of debtor and creditor. [Citation.]" (*Pope County State Bank v. U.G.I. Contracting Co.* (1932), 265 Ill. App. 420, 423-24; Accord: *Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 369 N.E.2d 119; *Conley v. National House Furnishing Co.* (1937), 292 Ill. App. 558, 11 N.E.2d 840.)

Since defendant Brach was not one of the original joint venture partners that contracted with Sexton for the annexation plat, he was not a party to the transaction which created the relation of debtor and creditor. Thus, he was not originally liable for the surveying work done to complete the annexation plat, and his payment on the account cannot create a liability for the balance.

The cases cited by the plaintiff do not persuade us that the rule set forth in the *Pope County State Bank* case is not controlling here. In *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 351 N.E.2d 264, the court expressly found there was an original liability on the part of the defendant to pay the plaintiff the amount due. The case of *Whitaker Farmers Grain Co. v. Soucie* (1940), 306 Ill. App. 284, 28 N.E.2d 343 (abstract of opinion), is an unpublished opinion and has no binding authority as precedent. (*People v. Oetgen* (1978), 62 Ill. App. 3d 29, 378 N.E.2d 1355.) In *Dick v. Zimmerman* (1904), 207 Ill. 636, the issue of original liability is not

addressed by the court; therefore, the case cannot be said to contradict the rule in the *Pope County State Bank* case. Likewise, we find the case of *Throop v. Sherwood* (1847), 9 Ill. (4 Gilm.) 92, unpersuasive. In the *Throop* case, a committee of four men contracted with Sherwood to build a bridge over the Fox River. A written agreement was executed by three of the four men, but not by the defendant Brink. Although Brink did not sign the written agreement, his name was inserted in the body of the writing and he afterward accepted it and acted with the others under it. The work on the bridge was commenced under the written agreement, but later it was orally modified by all of the parties, including Brink. Subsequently, suit was brought by Sherwood for money due based on an account stated. The account was not based upon the monies due under the written contract, because that contract had been orally modified, but rather was based on monies due for work and labor. Thus, it would appear that while the defendant Brink was not liable under the written contract, he was a party to the oral contract of modification. We must conclude, then, that statements made by the *Throop* court concerning the requirement of original liability which seemed to contradict the decision in the *Pope County State Bank* case, are comments not on a point in controversy and therefore lacking the authoritative force of a precedent. *Mid-American Lines, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 47, 411 N.E.2d 254.

Finally, while Brach was not originally liable for the December 1972 statement, the defendant Kemnetz clearly was liable; however, it was not Kemnetz, but rather Brach who made the partial payment on account in May of 1973. An agent can, by payment on account, stop the running of the statute of limitations against his principal. This will not occur unless it appears that the party making the payment was the agent of the principal for that purpose. (*Joseph v. Carter* (1943), 382 Ill. 461, 47 N.E.2d 471.) The question of authority and agency is a fact question and a trier of fact, in this case the trial judge, apparently found that no agency existed. Indeed, there is no direct evidence in the record that Brach was acting for Kemnetz with authority to state the account with Sexton for the 1972 survey. Concededly, that authority or agency could be inferred from the record, but we cannot say that the trial court abused its discretion in failing to draw that inference from the evidence. Furthermore, we do not believe the question of agency was conclusively established as a result of the 1973-1974 litigation. It is true, the circuit court in that case entered a finding that Leonard Kemnetz and Kenneth Brach were joint venturers. However, this finding fails to establish that ei-

ther venturer was the agent of the other for a particular purpose. In addition, Brach is not estopped by reason of the prior judgment to deny the very existence of an agency relationship. Although he was originally named as a defendant in the lawsuit, he was dismissed as a party prior to judgment. Estoppel by judgment is not binding on a party put out of a case by a dismissal. *Miller v. Miller* (1914), 263 Ill. 18, 104 N.E. 1078; *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1978), 65 Ill. App. 3d 907, 382 N.E.2d 1250.

In reaching the conclusions we have, we are mindful of the objects underlying the statute of limitation.

> "The purpose of statutes of limitation is to require the necessary litigation to be brought within such time that the particular circumstances may be proved with the utmost certainty and before adequate proof has become stale or entirely lost. Such statutes are intended to compel settlement within a reasonable time and while the truth presumably may be more easily obtained, and to afford a defendant a fair opportunity to investigate the circumstances on which liability against him is predicated while the facts are accessible.
>
> As sometimes said, statutes of limitation are designed to prevent fraudulent and stale claims from springing up after the lapse of great periods of time and surprising parties or their representatives when all proper evidence or vouchers have been lost, or the facts have become obscure by reason of such lapse of time or the defective memory, or the death or removal, of witnesses. They are designed to afford security from stale demands, when the true state of transactions may be incapable of explanation and the rights of the parties cannot be satisfactorily investigated.
>
> Statutes of limitation are based on the theory that the party has had a full opportunity to try his right in the courts, and that, by lapse of time and omission on his part, he has forfeited his right to assert his title in the law courts. The principal of the statute of limitations is based in part on the presumption of payment or release which naturally arises from the lapse of time." (25 Ill. L. & Prac. *Limitations* sec. 2 (1956).)

In the instant case, the plaintiff Sexton completed the annexation plat in December of 1972. In 1973, he failed to pursue his claim for payment. Likewise, he failed to act in 1974, 1975, 1976, and 1977. To hold now that he forfeited his right to payment by prolonged inaction is hardly inequitable.

For the reasons set forth and in reliance on the authorities cited,

we affirm the decision of the circuit court of La Salle County.

Affirmed.

ALLOY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I disagree with the majority that the circuit court properly dismissed this case based on the statute of limitations, no estoppel, no novation and no consideration. I must take exception with the trial court's findings that (1), no joint venture relationship existed between Kemnetz and Brach (2), that Brach was a stranger to the original undertaking and (3), that Brach did not benefit from the original undertaking, because I believe that all three findings are contrary to the evidence.

I take exception to the trial court's findings that no joint venture existed between Kemnetz and Brach because the existence of a joint venture had been determined in a previous proceeding between Barker, Brach and Kemnetz. In Barker v. Kemnetz *et al.*, 73-8-1145-CH, the circuit court of La Salle county entered an order making the following finding

> "4. That defendant, Leonard Kemnetz, owned a one-half interest in the Glenwood Ranch venture and that said venture was being operated as a joint venture between Leonard Kemnetz and Kenneth Brach \*\*\*"

In direct conflict with the former finding Judge Wagner stated in this case "The fact that some judge in a proceeding where some of these people or maybe all of them, I don't know, were involved in a finding that there is a joint venture that existed doesn't mean that there's a general partnership with the power to bind the other parties by contract." On the contrary that is exactly what the previous finding does mean. A joint venture creates a mutual agency between the parties (*Bachewicz v. American National Bank & Trust Co.* (1979), 75 Ill. App. 3d 252, 393 N.E.2d 652), and general partnership principles govern joint ventures.

The doctrine of estoppel by verdict mandates that this trial judge accept the finding of a previous court if the finding of a specific fact in a former proceeding is material and controlling to the decision in both cases. (18 Ill. L. & Prac. *Estoppel* sec. 4, at 67 (1956).) The finding that a joint venture existed in the first proceeding, the transcript of which was admitted into evidence in this case, was material and controlling because it defined the equitable interest awarded to

Barker. The fact that a joint venture existed between Brach and Kemnetz is certainly material and controlling here because it is determinative of Brach's authority to act on behalf of his partner, Kemnetz. The doctrine of estoppel by verdict applies not only to parties to the initial proceeding (Kemnetz, Barker and Brach) but to anyone with whom they were in privity. Therefore, the doctrine of estoppel by verdict mandates that this trial court recognize the joint venture relationship and the mutual agency which arose between the joint adventurers.

Admittedly there was no written agreement between Kemnetz and Brach defining their authority to act on each other's behalf. However, when no express authority was created, the court in *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 351 N.E.2d 264, looked to who benefited from the transaction and implied authority by ratification. The court stated "retaining the benefits of a transaction with full knowledge of all material facts is tantamount to ratification." (39 Ill. App. 3d 1035, 1038, 351 N.E.2d 264, 267.) Although the trial court found that Brach did not benefit from the original survey, the testimony of Sexton certainly indicates that Brach did benefit. The survey was being used by Brach as a partner in the new Glenwood Farms joint venture for the purpose for which it was intended—to subdivide Glenwood Farms. Brach asked Sexton to do "additional" work, not to make an annexation plat. Brach obviously knew that Sexton had not been paid for the original survey, and contrary to the trial court's findings that Brach paid $3,000 for the "additional" work alone, the evidence clearly indicates that Brach acknowledged that the entire $9,223.52 was owed Sexton and agreed to pay it all. Twice after May 25, 1973, Brach agreed to pay the balance. This certainly does not support a finding that Brach was a stranger to the original transaction, nor does it even remotely suggest that Brach did not benefit from the original survey.

Therefore, I would have reversed the trial court because Brach benefited from the original survey as a joint adventurer with Kemnetz and, therefore, had authority to act on behalf of Kemnetz in stating the account as of May 25, 1973. No original liability was thereby created and the statute of limitations did not run as to the account. Therefore, Kemnetz would certainly be liable under an account stated theory. Brach would be liable on a general contract theory because the evidence shows that in early May 1973 he entered into an agreement with Sexton whereby Sexton was to do "additional work" on the Glenwood Farms project and Brach agreed to pay for the additional work as well as pay for Sexton's work on the original survey of which

he was a beneficiary. Therefore, I believe that the trial court also erred in not finding a new contract with consideration, a finding which would have made Brach liable for all of Sexton's work on the original survey as of May 25, 1973. The Statute of Frauds would be no bar to this oral agreement because such an oral promise must be regarded as an original undertaking when supported by new and valuable consideration and is, therefore, not merely a promise to pay the debt of another and is not within the Statute of Frauds (*Oscar H. Wilke, Inc. v. Vinci* (1968), 96 Ill. App. 2d 189, 237 N.E.2d 768.) Therefore, I also find the trial court's finding that Brach's promise was to pay $3,000 for the additional work alone totally unsupported by the evidence and contrary to the intent of the parties. In my opinion the circuit court erred in dismissing this cause at the close of plaintiff's case.