(No. 42620.—

MOTOROLA, INC., Appellant, *vs.* THE INDUSTRIAL COMMIS-SION *et al.*—(BETTY LOU KAWA, Appellee.)

*Opinion filed December 4, 1970.*

Robert V. Nystrom, of Chicago, for appellant.

Brody & Gore, of Chicago, for appellee.

Mr. Justice Culbertson delivered the opinion of the court:

In May, 1965, Betty Lou Kawa sustained an injury arising out of and in the course of her employment with Motorola, Inc., which affected her lower back, neck and right arm and leg. On May 31, 1966, while working for the same employer, she felt something snap in her back as she reached up to place a "unit" on a shelf and experienced pain in her neck and right arm and leg just as she had on the occasion of her prior injury. She filed an application for an adjustment of claim under the Workmen's Compensation Act in regard to the latter incident and the Industrial Commission, confirming an arbitrator, awarded her compensation for temporary total disability, for partial permanent loss of use of the right arm and leg, and for necessary medical expenses. The circuit court of Cook County at first reversed the decision of the Commission as being against the manifest weight of the evidence; however, after the matter was reconsidered by the court on its own motion, the decision was affirmed. The employer has appealed. Focusing on the medical testimony, the principal question presented is whether the finding that claimant suffered an injury arising out of her employment is against the manifest weight of the evidence.

Dr. Samuel R. Rubert, an orthopedist who examined claimant on October 18, 1966, testified on her behalf that an objective examination had revealed tightness and spasm in the areas affected, and limitations from normal (spelling them out) in motion and flexion of the right shoulder, right leg and spine. These conditions, he stated, signified pathological changes in the soft tissues or bony structure of a nature that could be caused by strain or contusion injuries.

On the basis of his clinical findings, and X rays as well, Dr. Rubert diagnosed that claimant was suffering from contusion and strain changes in the cervical spine and right shoulder; cervical nerve root irritation; right shoulder radiculitis and pericapsulitis; contusion and strain of the lumbrosacral spine; lumbrosacral disc space narrowing; right and left leg sciatica and disc syndrome changes; and "traumatization" of pre-existing minimal arthritis of the cervical and lumbar spine. He expressed the opinions that the conditions he found were permanent, that there could be a causal connection between plaintiff's injuries and the incident at her work, and that the second incident could have aggravated conditions existing after claimant's industrial injury in May, 1965.

Two medical witnesses testified for the employer. Dr. Milton Wohl, an orthopedist who customarily treated employees of the employer and to whom claimant was sent on June 27, 1966, testified that his diagnosis was "a pre-existing degenerative condition of the 5th cervical disc," and that he had recommended the claimant's return to work. As the basis of his diagnosis he stated that he found no objective symptoms of injury, although there was some tenderness over certain of the thoracic and cervical spinal processes, and that he found the range of motion of the neck and back to be normal. He took X rays of the neck and upper part of the spine and interpreted them as showing no abnormalities except for some calcification of the neck glands, a moderate narrowing of the space between the fifth and sixth cervical vertebrae, and some anterior "lipping" of the same two vertebrae. He explained that "lipping" is frequently normal even in the absence of disease, that it could result from a slipped disc or from degeneration caused by the thrusting of "abnormal strain and stresses on the ligaments in this spot," and testified it could be assumed in this case that the "lipping" was caused by degeneration, inasmuch as there had been a narrowing of the disc space. On

cross-examination, he conceded that trauma could aggravate a pre-existing condition and that the stretching of joint tissue beyond normal was trauma, but stated there was no way of knowing whether the "lipping" and narrowing were pre-existing conditions and that he did not see that any "real trauma" had been sustained by the claimant. In addition, Dr. Wohl stated that he had not taken X rays of the lower spine, because claimant was not complaining of pain in her lower back or legs.

Dr. Edward J. Herba, a neurologist to whom claimant was referred by her family physician, testified for the employer that he had made complete neurologic evaluations of claimant on November 28, 1966, and February 23, 1967, and that, on the basis of various tests and objective examination, he found neurologic conditions to be normal. He did admit to finding a localized muscle tenderness in the area of the right scapula, which he believed was caused by an inflammation of the fascia (a thin layer of tissue connecting muscles), and stated: "In this case I thought it was caused by a muscle stretch."

While it is the contention of the employer that the preponderance of the evidence shows that claimant suffered no injury at all, thus causing the findings of the Commission to be against the manifest weight of the evidence, we cannot agree. Laying aside the testimony of the claimant relating to her treatment, hospitalization and subjective complaints, what is presented here is a choice between the conflicting views of medical experts. It is settled law that such a choice is pre-eminently the function of the Commission, and that a court of review will not substitute its choice unless the finding of the Commission is against the manifest weight of the evidence. (*Beck* v. *Industrial Com.*, 32 Ill.2d 148; *Inland Steel Co.* v. *Industrial Com.*, 18 Ill.2d 70.) The Commission here had a right to accept the testimony of Dr. Rubert in regard to injury and causal connection over that of the employer's experts, and we see no basis for disturbing

its finding. Particularly is this true in light of Dr. Herda's testimony that he found objective symptoms he believed to be caused by "a muscle stretch," and the testimony of Dr. Wohl that the purported degenerative condition he found could result from abnormal strain and stress on the ligaments involved.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*