(No. 43428.—

WELLMAN-LORD, INC., Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM PLUMMER LONG, Appellant.)

*Opinion filed May 27, 1971.*

Perona and Perona, of Spring Valley, for appellant.

Anthony C. Raccuglice, of La Salle, for appellee.

Mr. Justice Ward delivered the opinion of the court:

This case is an appeal from two orders of the circuit court of La Salle County, both of which were rendered pursuant to a writ of *certiorari* to the Industrial Commission of Illinois. They have been consolidated for review in this court. The claimant, William Plummer Long, on October 14, 1966, filed an application for adjustment of claim of an employment-related injury. An arbitrator after hearing evidence entered an award for medical expenses in the amount

of $194.65, for 35⅔ weeks of temporary incapacity, and for 10% loss of use of the left leg. On review the Industrial Commission ordered an award for the same amount of medical expenses and temporary total incapacity but entered an award for permanent partial incapacity under section 8(d) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(d)) in place of the award for loss of use under section 8(e) of the Act (par. 138.8(e)) which had been granted by the arbitrator. The circuit court on writ of *certiorari* reversed the Commission's award on the ground that it was against the manifest weight of the evidence. On remandment, the Industrial Commission after taking additional evidence entered a new award identical to its original award for medical expenses and temporary total incapacity, but enlarged to 20% of the loss of use of the left leg. This award was affirmed by the circuit court. The order of remandment by the circuit court and its order affirming the later award are challenged in this appeal by the petitioner.

The circuit court's first order remanding the case to the Commission was interlocutory and could not be appealed by the petitioner. (See *South Chicago Community Hospital* v. *Industrial Com.*, 44 Ill.2d 119; *Metropolitan Sanitary District of Greater Chicago* v. *Industrial Com.*, 37 Ill.2d 447; *Mayrath Co.* v. *Industrial Com.*, 33 Ill.2d 224.) However, as we said in *Downey* v. *Industrial Com.*, 44 Ill.2d 28 at p. 29: "* * * the circuit court's final judgment confirming the Commission's award, made pursuant to the remand, is properly presented for appeal. The entire record is before this court in the present appeal, and the correctness of the circuit court's initial decision to reverse and remand may now be reviewed within the context of the court's final judgment. (*ACF Industries, Inc.* v. *Industrial Com.*, 8 Ill.2d 552, 554; *Northwestern University* v. *Industrial Com.*, 409 Ill. 216, 219; *American Manganese Steel Co.* v. *Industrial Com.*, 399 Ill. 272, 274-75.) It is therefore proper for this

court to review the evidence upon which the arbitrator and the Commission based the original decision  *  *  *  and we must determine whether the circuit court was correct in finding that decision to be against the manifest weight of the evidence. *Gray Knox Marble Co.* v. *Industrial Com.,* 363 Ill. 210." Thus, we may consider the correctness of the court's order of remandment.

While the record shows that the Commission's first award for permanent partial incapacity was rendered only on the basis of the transcript of the evidence presented to the arbitrator and on oral argument before the Commission, there was no impropriety in this, as we have consistently held that the Commission exercises original jurisdiction and is no way bound by the arbitrator's findings. *J. J. Grady Company, Inc.* v. *Industrial Com.,* 46 Ill.2d 465; *American Smelting and Refining Corp.* v. *Industrial Com.,* 13 Ill.2d 275.

A review of the record on which the Commission's award for permanent partial incapacity was based persuades us that the Commission's award was not clearly contrary to the weight of the evidence and must be upheld. *Overland Construction Co.* v. *Industrial Com.,* 37 Ill.2d 525, 531.

The evidence at the hearing before the arbitrator showed that on September 23, 1966, the day of the accident, William Plummer Long, was working as an iron worker for Wellman-Lord, the respondent, near Depue, Illinois. Long testified that he had worked steadily in the construction field since 1960, engaging mainly in construction painting and steeple jacking. At the time of his injury, he had been in a kneeling position, tying structural steel in place. While bent over at the waist he was struck in the back by a piece of steel, which he estimated weighed about 150 pounds. He testified: "All of a sudden I got hit above the belt line on my back; it was real abrupt; it was like a shot, like somebody hit you with a sledge hammer. I was shaking all over after being hit." He attempted to resume work but ex-

perienced dizziness and pain in the hip region and lower legs. After about 30 minutes, he informed his foreman of the accident and visited the company nurse, who directed him to a Dr. Simonetta's office. There he was referred to St. Margaret's Hospital for the taking of X rays. He returned to work, but, he said, experienced severe pains in his hip and legs for the remainder of the day. He testified that after the accident he continued under Dr. Simonetta's care, receiving medication as well as therapy treatments. The therapy treatments, he said, were administered every day for the first four or five days and then a couple of times per week for another two weeks until approximately the middle of October of 1966.

The claimant said that he continued to work, despite constant pain in his lower back and legs, until October 11, 1966, when his employment was terminated by the respondent. He also continued to receive treatment from Dr. Simonetta and on November 21, 1966, he entered St. Margaret's Hospital at the physician's recommendation. He was placed in traction for six days and then released on November 29. Several days after returning home he again experienced pain in the lower back and legs. He visited Dr. Simonetta a couple of times in December of 1966 and was referred to a neurologist, whom he visited on two occasions. Sometime in December, Long consulted Dr. Henry Zingher of Rushville, Illinois. He received therapy treatments and medication from Dr. Zingher through May of 1967. Dr. Zingher prescribed the wearing of a common belt over the hip region as a support and this apparently relieved some of his discomfort. He wore this support 24 hours a day, he testified, and was wearing it at the time of the hearing before the arbitrator.

He did not work from October 11, 1966, the time his employment was terminated, until about the middle of June of 1967. He performed some work as a house painter, working about three hours a day, three days a week for three or

four weeks. He testified that while doing this work he often felt severe pain and he would have to go home and lie down until the pain subsided. It appears that around the beginning of August, 1967, he moved to Quincy, Illinois, where he did more house painting. He worked about three hours per day, three days per week for about two weeks but again experienced pain of the same character. On September 5, 1967, Long took employment at an appliance store, where he worked four hours a day. This work did not require any heavy lifting. However, the work caused recurrence of pain in his lower back and legs, he testified. Long declared that prior to his injury he had never had any difficulties with his back or legs. His salary at the store was $187 per month. It was stipulated that at the time of the accident he had been earning $180 per week.

Dr. Zingher, who testified on behalf of the claimant, was the only other witness at the hearing before the arbitrator. He found specific tenderness over the left sacroiliac area, which he testified indicated that there was damage in the joint between the sacrum and ilium. In his original examination he had tentatively diagnosed the claimant's condition as a sacroiliac strain. Dr. Zingher testified that during his examination the claimant made subjective complaints of pain in the lower back and left leg. He had prescribed diathermy treatment and the use of an ordinary belt. The use of the belt around the hips, he stated, was to help hold together the pelvic girdle which had been loosened by strain to the ligaments and relieve some of the claimant's pain. The diathermy treatments were discontinued in May. Dr. Zingher testified that the last time he had seen the claimant, on September 16, 1967, he still had tenderness in the sacroiliac area. It was Dr. Zingher's diagnosis that Long had strained ligaments and nerves of the spine, which he said was a severe left sacroiliac strain. He testified that he had never released the claimant as being fit for heavy work and it was his opinion that the injury was permanent and

that the claimant's condition might worsen through arthritis. His prognosis concerning Long's chances for improvement was poor.

The respondent introduced into evidence two medical reports of Dr. D. W. McKinney, who had examined the claimant on November 4, 1966, and May 31, 1967, at the request of the employer. His reports showed that on both occasions Long complained of pressure in the lower portion of the back and pain over the posterior pelvic area. It was observed in the reports that the claimant was cautious and guarded in getting on and off the examining table and was deliberate in his motions. The reports concluded that the claimant, in the physician's opinion, had apparently suffered soft-tissue injury to the lower back at the time of the accident in September of 1966 but that no pertinent objective findings were found to substantiate any diagnosis other than soft-tissue injury.

We believe that the question here resembles the situation in *Motorola, Inc.* v. *Industrial Com.*, 47 Ill.2d 219, where we said: "Laying aside the testimony of the claimant relating to her treatment, hospitalization and subjective complaints, what is presented is a choice between the conflicting views of medical experts. It is settled law that such a choice is pre-eminently the function of the Commission, and that a court of review will not substitute its choice unless the finding of the Commission is against the manifest weight of the evidence. (*Beck* v. *Industrial Com.*, 32 Ill.2d 148; *Inland Steel Co.* v. *Industrial Com.*, 18 Ill.2d 70.)"

The respondent does seek to argue here the validity of Dr. Zingher's findings, including his prognosis. However, the question of his qualifications and the weight to be given his testimony were matters within the sound discretion of the Commission. The Commission could properly have preferred and accepted the testimony of the claimant's doctor, Dr. Zingher, regarding the nature and extent of Long's injury, *viz.*, permanent partial disability. This is the only

issue raised in this appeal, and we find no basis for disturbing that decision. *Cf. Gould* v. *Industrial Com.,* 40 Ill.2d 548.

The Commission's award of compensation on remand under the circumstances was error. The judgment of the circuit court of La Salle County which affirmed that award is reversed and the cause is remanded to the circuit court with directions to enter judgment in accordance with the original award of the Industrial Commission.

*Reversed and remanded, with directions.*