(No. 52773.—

MID-AMERICAN LINES, INC., *et al.,* Appellees, v. THE INDUSTRIAL COMMISSION *et al.* (Dorothy Johnson, Appellant).

*Opinion filed September 29, 1980.*

48

Raymond Lannon, Ltd., of Chicago (Raymond L. Lannon and Patricia C. Lannon, of counsel), for appellant.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (Thomas P. Smith and James W. Ford, of counsel), for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

This workmen's compensation case (see Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) arose out of fatal injuries sustained by Walter A. Johnson on September 13, 1977. The parties stipulated that his death was compensable under the Act but could not agree that he had dependents entitled to an award or on the amount of medical expenses owed. The first time this case was heard the arbitrator and the Commission found that the decedent was survived by his widow, Dorothy Johnson, and by a minor child, Dorothy Victoria (Vicky) Gilmore, the widow's granddaughter, to whom decedent stood *in loco parentis*. The appropriate death benefits were ordered to be paid "to said widow, for her use and benefit and for the care, education and maintenance of said minor grandchild, subject to the further order of the Industrial Commission of Illinois." The circuit court of Cook County remanded the cause to the Commission "for further evidence on the issue of the relationship of Vicky Gilmore to the deceased, Walter Johnson." In all other respects the Industrial Commission award was confirmed.

Before the Commission reheard the case, the widow filed a petition requesting attorney fees and penalties under sections 19(k) and 16 of the Act (Ill. Rev. Stat. 1975, ch. 48, pars. 138.19(k), 138.16), for unreasonable and vexatious delay on the part of respondent in paying the awarded compensation. The Commission consolidated the hearing on the *in loco parentis* issue and on the widow's petition. The respondent, however, conceded that the deceased stood *in loco parentis* to Vicky Gilmore. The Commission then ordered 50% of the award to "be used

solely for the care, education and maintenance of Dorothy Victoria Gilmore, subject to the further order of the Industrial Commission." The Commission also ordered respondent to pay attorney fees in the amount of $1,064.74 under section 16 of the Act and a 50% penalty in the amount of $5,323.68 under section 19(k). The circuit court of Cook County set aside the assessment of attorney fees and the penalty; otherwise the award was confirmed.

The widow first challenges the circuit court's original order of remandment for further evidence on the *in loco parentis* issue. The remand order was interlocutory and therefore not appealable when issued. Pursuant to that order, the Commission had original jurisdiction subject to the remanding court's directions. The Commission's post-remand actions are appealable to this court after review in the circuit court. We now must review the whole record, including the propriety of the original order of remandment. See *Stockton v. Industrial Com.* (1977), 69 Ill. 2d 120, 124-26; *Technical Tape Corp. v. Industrial Com.* (1974), 58 Ill. 2d 226, 232-33; *Wellman-Lord, Inc. v. Industrial Com.* (1971), 48 Ill. 2d 533.

Section 7(a) of the Act states that death benefits are payable to a surviving "widow, widower, child or children" and then defines child as "a child whom the deceased employee left surviving, including a posthumous child, a child legally adopted, a child whom the deceased employee was legally obligated to support or a child to whom the deceased employee stood *in loco parentis.*" (Ill. Rev. Stat. 1975, ch. 48, par. 138.7(a).) Both parties here agree that the circuit court's order of remandment pursuant to section 19(f)(2) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(f)(2)) was proper only if the Commission's original finding, that the deceased stood *in loco parentis* to Vicky, was against the manifest weight of the evidence. See, *e.g., Allis Chalmers Manufacturing Co. v. Industrial Com.* (1971), 50 Ill. 2d 2; *Wellman-Lord, Inc. v. Industrial*

*Com.* (1971), 48 Ill. 2d 533; *Peabody Coal Co. v. Industrial Com.* (1919), 289 Ill. 330.

*In loco parentis* did not have a monolithic common law meaning. (See *Thomas v. United States* (6th Cir. 1951), 189 F.2d 494, 505, *cert. denied* (1951), 342 U.S. 850, 96 L. Ed. 641, 72 S. Ct. 78; *Banks v. United States* (2d Cir. 1959), 267 F.2d 535.) A showing of *in loco parentis,* however, has come to require that the putative parent (1) intended to assume parental functions and (2) discharged parental duties. See *Gribble v. Gribble* (Utah 1978), 583 P.2d 64, 67; *Lyles v. Jackson* (1976), 216 Va. 797, 798, 223 S.E.2d 873, 874 *(per curiam)*; *Workman v. Workman* (Okla. 1972), 498 P.2d 1384, 1386; *In re Fowler* (1972), 130 Vt. 176, 181, 288 A.2d 463, 466; *McManus v. Hinney* (1967), 35 Wis. 2d 433, 436-41, 151 N.W.2d 44, 45-48; *Faber v. Industrial Com.* (1933), 352 Ill. 115, 119-20.

The widow, Dorothy Johnson, was the only witness at the original hearing before the arbitrator. Much of her testimony related to the absence of dependent children from either her or the deceased's earlier marriages. Exhibits relevant to funeral and medical expenses, her marriage to the deceased, and his death were admitted in evidence.

The widow and the deceased had no children from their marriage. She explained, however, that she had taken custody of Vicky Gilmore, 13, in 1973 under the terms of an alleged will which, concededly, was never probated and which was not introduced as evidence. (Upon remandment, it was identified as the will of Vicky's father, the son-in-law of the widow. Because it was never authenticated, it was submitted on the record as a rejected exhibit.) Vicky lived with the widow and the decedent after their marriage on June 28, 1976. It is not clear whether they changed residences after the marriage. On cross-examination, the widow revealed that Vicky was in

a special school for slow learners. In response to questions relating to the deceased's children from prior marriages, the following colloquy took place:

"Q. Are they [the deceased's children from a prior marriage] all physically well, self-sufficient to your knowledge?

A. Yes

Q. Are any of them retarded—

A. No sir.

Q. —or unable to support themselves?

A. They're all married and have children.

Q. Do you know whether or not Mr. Johnson supported in whole or in part any grandchildren?

A. No sir. He didn't. He didn't.

Q. He did not?

A. No. The only one—

Q. Pardon

A. The only one, my granddaughter. Of course, she's my granddaughter, living at home. He helped with her.

Q. Are you working at the present time?

A. Yes."

On redirect examination she testified that the deceased had controlled the household money and that he wrote all checks. The arbitrator requested the production of the deceased's income tax records, and, by stipulation, they subsequently were entered on the record, showing that from 1971 to 1976 the deceased claimed no dependents except himself.

We agree with the circuit court that this evidence was insufficient to support a finding that the deceased stood *in loco parentis* to Vicky Gilmore. There was no evidence that Vicky considered the deceased a surrogate father or that he functioned as a parent (see *Workman v. Workman* (Okla. 1972), 498 P.2d 1384, 1386; *McManus v. Hinney* (1967), 35 Wis. 2d 433, 436-41, 151 N.W.2d 44, 45-48) or that he considered himself her surrogate father. Evidence as to the amount or significance to Vicky of the support he provided (see *Lyles v. Jackson* (1976), 216 Va. 797,

798, 223 S.E.2d 873, 874 (*per curiam*)) was also absent; therefore it was impossible to determine whether it approximated that provided by a parent. (The deceased's failure to claim Vicky as a dependent on his 1976 income tax return, however, is not probative of this issue. He filed singly that year, and it is doubtful that he could have claimed her as a dependent regardless of his *in loco parentis* status because she had not lived with him for the entire year (see 26 U.S.C. sec. 152(a)(9) (1976); 26 C.F.R. 1.152—1(b) (1976)).)

*Faber v. Industrial Com.* (1933), 352 Ill. 115, cited by the widow, does not command a contrary finding. There the claimant had taken the decedent from a hospital when he was four weeks old, had "mothered" him as her own son and, at the time of his death, was dependent upon him for support. In turn, he had taken her name, referred to her as his mother and, until his death, had always given her his earnings. The court, under these facts, held that the claimant was entitled to receive the compensation due under the Act pursuant to the *in loco parentis* doctrine. Here, no similar indications of *in loco parentis* were in evidence at the original hearing.

In *Superior Coal Co. v. Industrial Com.* (1922), 304 Ill. 320, also cited by the widow, this court upheld a minimum award based upon a child's grandfather's moral obligation to support her in circumstances where one parent had died and the other parent could not support her. The court in *Superior Coal,* however, would not have recognized a moral obligation on the part of the deceased in the instant case, a nonblood relative. See *Faber v. Industrial Com.* (1933), 352 Ill. 115, 119-20; *Capek v. Kropik* (1889), 129 Ill.. 509, 515; *Brush v. Blanchard* (1856), 18 Ill. 46, 47.

The circuit court's decision to remand the cause for additional evidence was proper. The widow failed to meet her burden of proof on this issue, but all of the relevant

evidence had not been produced. See *Conreaux v. Industrial Com.* (1933), 354 Ill. 456, 464; *Latham-Lincoln Mining Co. v. Industrial Com.* (1923), 306 Ill. 588, 590.

When the case was reheard, respondent conceded that the deceased had stood *in loco parentis* to Vicky Gilmore. The widow claims, however, that the pro-rata division of the award is contrary to law and "unduly burdensome." We agree. Respondent, citing *Snyder v. Industrial Com.* (1969), 42 Ill. 2d 18, argues that where there is more than one claimant under section 7(a) (Ill. Rev. Stat. 1975, ch. 48, par. 138.7(a)) the Commission must grant each an equal share of the award. Respondent further contends that Public Act 79–79 (approved June 30, 1975), reenacting in substance section 7, evidences legislative approval of *Snyder.* Our examination of *Snyder* and our reexamination of section 7 convince us that respondent's argument is overbroad.

The substance of the present section 7 as relevant here has remained relatively constant since its enactment in 1915. Section 7(a) of that year (1915 Ill. Laws 402, Hurd's Ill. Rev. Stat. 1915-16, ch. 48, par. 132(a)) provided death benefits for "any widow, child or children whom he [the decedent] was under legal obligation to support at the time of his injury." Section 7(f) provided that these benefits were payable, at the employer's option, to the deceased's personal representative or to the beneficiaries and was to be distributed "to the heirs who formed the basis for determining the amount of compensation to be paid by the employer, the distributees' share to be in the proportion of their respective dependency at the time of the injury on the earnings of the deceased: *Provided,* that, in the judgment of the court appointing the personal representative, a child's distributive share may be paid to the parent for the support of the child." (Emphasis in original.) 1915 Ill. Laws 402, Hurd's Ill. Rev. Stat. 1915-16, ch. 48, par. 132(f).

Paragraph (f) was reenacted in 1917 as paragraph (g). (1917 Ill. Laws 494, Hurd's Ill. Rev. Stat. 1917, ch. 48, par. 132(g).) Paragraph (a) remained virtually the same. In 1919, paragraph (g) was amended to allow the Commission or an arbitrator thereof, "in its or his discretion," to "order or award the payment to the parent or grandparent of a child for the latter's support the amount of compensation which but for such order or award would have been paid to such child as its share of the compensation payable, which order or award may be modified from time to time by the Commission in its discretion." (1919 Ill. Laws 540, Hurd's Ill. Rev. Stat. 1919, ch. 48, par. 132(g).) The new provision also required the employer to make payment directly to the dependents and not, as before, to the deceased's personal representative or his beneficiaries, at its option. 1919 Ill. Laws 540, Hurd's Ill. Rev. Stat. 1919, ch. 48, par. 132(g).

In *Swift & Co. v. Industrial Com.* (1919), 288 Ill. 132, litigated under the 1915 statute, the employer contended that death benefits owed under the Act to a widow and child, dependents by virtue of section 7(a), had to be apportioned. The court held to the contrary:

"[Paragraphs (a) and (f) of section 7] do not provide for determination by the Industrial Commission of the proportionate share which each beneficiary is entitled to receive where the beneficiaries are all of a class specified in paragraph (*a*) of said section[.] *** [T]he Commission must, in order to determine the total amount of compensation, determine who is entitled to receive the same. *** [However, it is not] incumbent upon the Commission to determine how much or what proportion of the compensation every member of the class may receive." 288 Ill. 132, 139.

The 1937 version of the statute, stemming directly from the provisions of 1919, was similarly construed in

*Beckemeyer Coal Co. v. Industrial Com.* (1938), 370 Ill. 113:

"The persons who formed the basis for determining the amount of compensation to be paid by the employer *** were the widow of the deceased employee and the minor children. These dependents are all of the class specified in paragraph (a) of section 7. In such cases the commission is not required to determine the proportionate share of the award which each beneficiary shall receive in case of the death of an employee. (*Swift & Co. v. Industrial Com.* 288 Ill. 132.)" 370 Ill. 113, 115.

Although the employer had requested a proration of the benefits, none of the dependents had requested it, and, under the facts adduced, no useful purpose would have been served by proration. The court explained, however, that the Commission subsequently could modify the award, if appropriate, to designate some person other than the mother as guardian or next friend for the purpose of receiving the compensation and that, in such a case, apportionment would be required. But "[t]he arbitrator and the commission were warranted, in the exercise of the discretion vested in them by section 7(g) of the statute, to direct payment of the entire award to the mother for the benefit of herself and the minor children. Neither apportionment of the award nor the appointment of a guardian was mandatory." 370 Ill. 113, 116.

The purpose of the amendments of 1919 and of the *Swift* and *Beckemeyer Coal* holdings is readily explained when it is remembered that the Workmen's Compensation Act was designed to replace the common law relating to industrial accidents with a compensation program administered by an agency. It would be administratively burdensome to require the involvement of courts in appointing personal representatives before compensation benefits could be awarded or to require the judgment of the court

before death benefits could be paid to the parent or grand-
parent of a dependent child. The Commission is charged
with assessing witness credibility and drawing inferences
from the adduced facts, and it makes more sense for the
Commission to make this judgment at the same time. Thus
the amendments of 1919 entrusted the Commission with
the additional discretion to pay a child's death benefits
to grandparents as well as parents, required these benefits
to be paid directly to the dependents, and allowed the
Commission to decide whether compensation should be
paid to a dependent child's parent or grandparent for the
benefit of that child. *Swift* and *Beckemeyer Coal* both
recognized that where a dependent child and mother lived
together the death benefits could be paid to the mother
for the use and benefit of both.

In 1951, paragraph (g) was reworded and made section
7(e). The substance of new section 7(e) remained the
same. In *Snyder v. Industrial Com.* (1969), 42 Ill. 2d 18,
the court stated that section 7(e) "was intended to apply
only to apportionment of compensation among claimants
under (b), (c) or (d) when dependency is a question of
fact" and that "the legislative intent is best served in cases
where multiple 7(a) claimants survive by granting each an
equal share of the award." (42 Ill. 2d 18, 25.) These state-
ments broadly interpreted were *dicta* and in error and
should be confined to the facts as presented in that case.

In *Snyder,* the decedent was survived by his widow and
his daughter by a prior marriage. The arbitrator found that
the daughter was over 18 years old at the time of her
father's death. Under section 7(a) of the Act, she was not
entitled to compensation for that reason. The daughter
was domiciled in Minnesota with her mother, however,
pursuant to the divorce from the decedent. The Minnesota
district court had ordered the decedent to pay child
support until his daughter "became self-supporting, eman-
cipated or 21." (42 Ill. 2d 18, 20.) The court held that the

Minnesota decree constituted a legal obligation to support the daughter, despite her age, within the scope of section 7(a). She was entitled, accordingly, to a portion of the death benefits.

The widow in that case requested a remand to the Commission to determine the extent of the daughter's actual dependency under section 7(e). The court noted, in response, that section 7(a) beneficiaries were conclusively presumed to be wholly dependent. Therefore a remand to determine actual dependency was dysfunctional. The court, however, then had to decide how to divide the award.

In deciding this issue, *Snyder* relied on three cases, all of which involved children and widows living apart with the widows claiming a right to the entire death benefit. In those situations the courts could not leave minor children totally unprovided for, even if they were living with another adult, without negating the beneficent purposes of workmen's compensation. Consequently, the awards were divided evenly and sent separately to the widows and children. (See *Meade v. L. G. DeFelice & Son, Inc.* (1950), 137 Conn. 292, 76 A.2d 862; *Coakley v. Coakley* (1913), 216 Mass. 71, 102 N.E. 930; *Ocean Accident & Guarantee Corp. v. Stuart* (E.D. La. 1950), 92 F. Supp. 225.) The latter case acknowledged the statutory provision whereby the entire death benefit, as increased by and owed to a dependent child or dependent children, was to be paid only to the wife "where the wife and child or children are residing together." (92 F. Supp. 225, 226.) *Snyder's* facts paralleled these cases, and the court adopted their rationale and ordered the award divided equally. 42 Ill. 2d 18, 25.

Whether the Commission, in its discretion, could award the entire death benefit to a section 7(a) dependent parent or grandparent living with a section 7(a) dependent child, for the use of both, was not before the *Snyder* court, and

the language relied upon by respondent in the instant case was, accordingly, *dicta.* As such, "it is not binding authority within the rule of *stare decisis.*" (*Williams v. Crickman* (1980), 81 Ill. 2d 105, 113.) Upon reconsideration, we reaffirm *Swift* and *Beckemeyer Coal* and hold that the Commission, in its discretion, can award a section 7(a) widow with custody of a section 7(a) child the entire death benefit. The contrary language in *Snyder* should not be deemed to have overruled *Swift* and *Beckemeyer Coal sub silentio. Snyder* holds that where such an award to a section 7(a) widow is inappropriate (in that case because widow and child lived apart), it must be divided equally and sent to each section 7(a) dependent.

Public Act 79–79 (approved June 30, 1975) reenacting section 7, does not alter this analysis. Language in *Snyder* conflicted with the holdings of *Swift* and *Beckemeyer Coal.* It is our responsibility to reconcile these cases. (See *Williams v. Crickman* (1980), 81 Ill. 2d 105, 111-12.) Moreover, Public Act 79–79, by its terms, history and purpose, manifests no legislative intent—one way or the other—on the issue here and therefore cannot be interpreted as support for respondent's position. See H. Hart & A. Sacks, The Legal Process 1404 (tent. ed. 1957).

In the instant case, the Commission exercised its discretion to prorate the award. We do not know whether it did so thinking that *Snyder* compelled this result. Respondent cites no evidence, however, that the widow would fail to provide first-rate care for Vicky.

Respondent argues that Vicky's special schooling needs justify the proration. We disagree. The widow originally provided special schooling for Vicky, and there was no evidence that, absent proration, Vicky's education would be impaired. Nor do we think Vicky would somehow be deprived of support without proration. The widow, with no apparent thought of recompense, has

taken care of Vicky since 1973, long before her marriage to the deceased. Further protection is provided by the Commission's ability to modify the award at any future time upon an appropriate showing. (Ill. Rev. Stat. 1975, ch. 48, par. 138.7(e).) We hold, accordingly, that the death benefits should be paid to Dorothy Johnson for her use and benefit and for the use, education and maintenance of Vicky Gilmore, subject to future modification by the Commission.

The Commission's assessment of penalties and attorney fees (see Ill. Rev. Stat. 1975, ch. 48, pars. 138.16, 138.19(k)) was improper as the circuit court held. The arbitrator rendered her original decision on December 22, 1977. The respondent thereafter made payments pursuant to this award. The Commission affirmed the award on April 25, 1978. Respondent timely filed a writ of *certiorari.* This writ was dismissed on November 15, 1978, pursuant to a lump-sum negotiated settlement, for which contracts were prepared and executed by the widow, but was reinstated on December 5 after the widow, at the time of the settlement hearing, changed her mind and disapproved of the settlement. The circuit court remanded the cause on January 26, 1979. The respondent had stopped its payments on June 26, 1978.

The section 19(k) petition was filed on February 15, 1979. The respondent paid the amount that had accrued since June 1978, in May 1979, and has apparently maintained the payments thereafter. The Commission's decision was rendered in July 1979, and the appeals to the circuit court and this court followed.

Section 19(n) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(n)) contemplates that an employer can wait until the award is final and pay 6% interest on it, accruing from the date of the arbitrator's decision, or it can avoid interest payments by tendering the payments due after the arbitrator's decision. When an award is final, section

19(g) (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(g)) author-
izes a party to obtain a judgment thereon. In light of these
sections, it is not surprising that our cases concerning a
claim for unreasonable or vexatious delay have analyzed
the delay from the point at which an award became final.
(See *Board of Education v. Industrial Com.* (1932), 351
Ill. 128; *Board of Education v. Industrial Com.* (1968),
39 Ill. 2d 167; *Sanchez v. Industrial Com.* (1973), 53 Ill.
2d 514; *City of Chicago v. Industrial Com.* (1976), 63 Ill.
2d 99; *Wilbon v. Industrial Com.* (1976), 65 Ill. 2d 221.)
The payments in the instant case were tendered before the
award became final.

Respondent has conceded throughout these proceed-
ings that the widow was entitled to some award. But that
concession is not dispositive. In *City of Chicago v. Indus-
trial Com.* (1976), 63 Ill. 2d 99, the city had neglected,
during proceedings before the arbitrator, to request credit
under section 8(e) of the Act (Ill. Rev. Stat. 1969, ch. 48,
par. 138.8(e)(17)) for payments made to the claimant for
a prior injury. The city had not sought review of the award
and it had become final. Several months later the claimant
filed a section 19(k) petition. The court held that, because
the city, in good faith, negotiated with the claimant for
credit for the prior payments, no penalty could be
assessed. It is worth noting that, as in the instant case—
where the respondent did not dispute the widow's right to
an award—the city clearly could only legitimately contest
that portion of the award which would constitute a double
recovery in light of its payments for the prior injury.

The dispute over the form of the payments in the
instant case was legitimate. Although it involved only a
portion of the award, the respondent was entitled to with-
hold payments under these facts until this issue was
resolved.                                                    .

The judgment of the circuit court is affirmed in part
and reversed in part. The cause is remanded to the Indus-

trial Commission for entry of an award in accordance with this opinion.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*