(No. 56276.—

RODNEY STEVEN RILEY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Clay Equipment Corporation, Appellee).

*Opinion filed March 25, 1983.*

316

Mike McElvain and Robert Williams, Ltd., both of Bloomington, for appellant.

Goldsworthy & Fifield, of Peoria (Robert W. Bach, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a consolidated hearing on two separate applications for adjustment of claim, an arbitrator for the Industrial Commission found that on October 25, 1974, petitioner, Rodney Steven Riley, suffered accidental injuries arising out of and in the course of his employment by respondent, Clay Equipment Corporation, and awarded workmen's compensation for 14⁴/₇ weeks of

temporary total incapacity. On the second claim the arbitrator found that on March 11, 1975, petitioner suffered accidental injuries arising out of and in the course of his employment by respondent which caused petitioner to become wholly and permanently incapable of work. On review, the Industrial Commission set aside the arbitrator's awards. The Commission found that on October 25, 1974, petitioner sustained accidental injuries arising out of and in the course of his employment which rendered him temporarily totally disabled for a period of 14$4/7$ weeks and as of March 11, 1975, rendered him totally and permanently disabled, and awarded benefits accordingly. The Commission found that petitioner failed to prove that he sustained accidental injuries on March 11, 1975. The decision of the Commission concerning the accident of March 11, 1975, was not further reviewed. On *certiorari* the circuit court of Tazewell County vacated the award of the Industrial Commission and remanded the cause with directions to determine the period of temporary total disability. On remand, the Industrial Commission, pursuant to the remanding order, found that petitioner was totally disabled for at least 64 weeks as a result of the accident of October 25, 1974—the maximum period of disability which could be considered temporary. The Industrial Commission also found that there was no permanent total disability and that "under the provisions of the Workmen's Compensation Act in effect, no other permanent disability had been established by the record." On *certiorari*, the circuit court set aside the award for temporary total disability.

The testimony shows that petitioner had been a "brittle" juvenile diabetic since age 13, and since he was 17 had taken insulin for his condition. At the time of the accident he was 31 years of age. Petitioner began smoking at age 17 and was smoking 1½ packages of cigarettes per day before the October 25 accident. Petitioner suf-

fered from elevated serum cholesterol and admitted to heavily salting his food.

Petitioner started working as a welder for respondent in 1964. On October 25, 1974, petitioner was welding a 10,000-bushel grain cleaner. Petitioner had to move a 500-pound generator-type welder to the grain cleaner. The generator was mounted on a steel frame, on steel wheels. Petitioner testified that it was necessary to "manhandle" the generator and welder to get them into place. The area in the grain cleaner where he was required to work was small, approximately 2½ feet in diameter, and it was necessary that he crawl into that space. In order to complete the job he was required to lie curled up for about eight minutes. When he crawled out of the grain cleaner, he was out of breath, felt weak, and his left arm hurt. He sat down on a bench for a short while, and then helped his partner move some 25- to 30-pound iron legs and bolt them to the grain cleaner in order that the cleaner could be stood upright and its upper side welded. He moved the bench to the welder, jumped up on the bench, and started to jump into the grain cleaner when he felt a severe pain in his chest. He was sent home. Petitioner's wife then took him to their family doctor, Dr. Patton, who performed several tests. The tests indicated that petitioner was having a coronary occlusion or a myocardial infarction. Dr. Patton hospitalized petitioner. Dr. Thomas Clark diagnosed petitioner as having suffered an acute myocardial infarction.

Petitioner returned to work on February 3, 1975, for about two hours per day and gradually increased his work day to five hours. On March 11, 1975, petitioner performed various chores, including turning a 250-pound "14-head" on its side and moving the 500-pound welder 60 to 70 feet. While hammering on a valve, he noticed he was getting wheezy and shortwinded and his fingers and left arm were starting to tingle. He was taken to

Dr. Patton's office, who diagnosed petitioner's condition as acute pulmonary edema. Petitioner was hospitalized that day.

The hospital's final summary for petitioner's hospitalization from March 11, 1975, to March 19, 1975, indicated that petitioner related to his doctor that on Monday, March 10, 1975, petitioner had consumed a jar of pickles and that evening he drank a half gallon of iced tea. Petitioner was diagnosed as having pulmonary edema secondary to coronary artery disease with possible dietary indiscretions.

After his release from the hospital, petitioner did not return to work with respondent, nor did he work elsewhere. Testimony was adduced as to the extent of his disability and his employability.

Petitioner was again hospitalized on May 6, 1975. Dr. T. S. Shay's "Final Summary" states that because petitioner had recently developed more symptoms of congestive heart failure, it was determined that he should have a triple coronary bypass operation. During the operation it was discovered that the left anterior descending coronary artery was too thin and thus unsuitable for grafting, but two other coronary arteries were grafted. Extensive deterioration due to atherosclerosis was noted.

Several reports from physicians and Dr. Patton's evidentiary deposition were admitted into evidence. Reports to respondent's director of health services indicated that petitioner's diabetes, cigarette smoking, and severe hyperlipemia contributed to petitioner's coronary proneness. These reports concluded that petitioner's myocardial infarction was caused by his diabetes and atherosclerosis and was not work related. Dr. Clark's medical summary stated that petitioner's atherosclerosis was accelerated by his diabetes, smoking, and high levels of cholesterol, and explained that physical activity causes an increased demand on the heart muscle which in turn

requires an increased blood supply to these muscles. Dr. Clark further explained that where severe coronary artery disease is present, this blood supply cannot be delivered, and thus physical activity may "precipitate" myocardial infarction. Dr. Patton opined that moderate to heavy lifting could precipitate a myocardial infarction in a person with moderately severe vascular disease.

In oral argument, respondent conceded that the Industrial Commission's determination that petitioner's work aggravated his heart condition and precipitated the myocardial infarction is not against the manifest weight of the evidence. Respondent argues, however, that the issue in this case is whether petitioner's permanent disability was caused by this "accident" on October 25, 1974, or was the result of the rapid progression of his atherosclerosis. Respondent notes that all of the hospital summaries and doctors' letters refer to the atherosclerosis as the reason for his present condition.

Petitioner argues that the reports submitted by respondent are not persuasive because none of them indicate that the physicians were aware of the specific physical activity engaged in by petitioner on October 25, 1974. Petitioner notes that Dr. Heller's report states that the myocardial infarction was the cause of his subsequent cardiac problems:

> "Once the extensive heart muscle damage had occurred, the patient's subsequent cardiac problems were inevitable. Given the extensive degree of heart muscle damage from the myocardial infarction, an excessive intake of salt and fluid would have been expected to produce overt heart failure. This was, in fact, what happened in the March 1975 episode, and this episode cannot in any way be considered work related."

Petitioner argues that this statement, when considered with Dr. Patton's and Dr. Clark's opinions that physical stress could have precipitated the myocardial infarction, adequately proves that his permanent disability was caused

by the accident arising out of and in the course of his employment by respondent, and the decision of the Commission was not contrary to the manifest weight of the evidence.

When the circuit court remanded the cause following the first decision of the Industrial Commission, jurisdiction was restored to the Commission subject to the requirement that it follow the directions contained in the remanding order. (*Stockton v. Industrial Com.* (1977), 69 Ill. 2d 120.) The decision of the Commission, made pursuant to the remanding order, was final and reviewable, and upon review this court may review the entire record and determine the correctness of the circuit court's original order. *Mid-American Lines, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 47.

We are of the opinion that the circuit court erred in setting aside the Industrial Commission's initial finding that the October 25, 1974, accident arose out of and in the course of petitioner's employment and that it rendered him permanently and totally disabled. While there was no dispute as to petitioner's preexisting conditions or the various causes of petitioner's myocardial infarctions, different inferences could be drawn concerning the cause of petitioner's permanent and total disability. "[A] preexisting heart condition does not render a compensation award contrary to the manifest weight of the evidence where the Commission, from the evidence, could have inferred that the employee's work-related incident was a causative factor." (*Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 174.) The Industrial Commission could have drawn the inference that the myocardial infarction caused such extensive damage to petitioner's heart muscles that his ensuing disability was causally related to the infarction or the inference that while petitioner's myocardial infarction was caused by physical stress at work, it rendered him only temporarily totally disabled and that his diabetes and vascular diseases were the cause of his permanent total disability. Where dif-

ferent inferences can be drawn from the facts presented to the Commission, it is for the Commission to decide which inference to draw and its findings will not be disturbed unless they are contrary to the manifest weight of the evidence. (*Peoria Motors, Inc. v. Industrial Com.* (1982), 92 Ill. 2d 260, 265; *Martin v. Industrial Com.* (1982), 91 Ill. 2d 288, 293-94; *Doyle v. Industrial Com.* (1981), 86 Ill. 2d 544, 551.) The judgment is reversed and the original decision of the Industrial Commission is reinstated.

*Judgment reversed;*
*award reinstated.*